No. 4 February 19, 2016 581

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Respondent on Review,*

*v.*

EMA RAMOS,
*Petitioner on Review.*

(CC C092342CR; CA A150423; SC S062942)

On review from the Court of Appeals.*

Argued and submitted September 15, 2015.

Morgen E. Daniels, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Amy C. Liu, Portland, filed the brief for *amicus curiae* National Crime Victim Law Institute. With her on the brief was Margaret Garvin.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, Brewer, and Nakamoto, Justices.**

WALTERS, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

_____

\* On appeal from Washington County Circuit Court, Kirsten E. Thompson, Judge. 267 Or App 164, 340 P3d 703 (2014).

\*\* Linder, J., retired December 31, 2015, and did not participate in the decision of this case.

**WALTERS, J.**

After defendant set fire to her restaurant and filed a fraudulent claim with her insurance company for damage to restaurant equipment, she was convicted of second-degree arson and attempted first-degree aggravated theft. Thereafter, the state sought a restitution award against defendant. Under ORS 137.106,[1] the trial court ordered defendant to pay restitution and included in its restitution award to one of the victims, defendant's insurer, fees that the victim had paid to attorneys and investigators for their time spent in investigating defendant's claim for benefits and in providing grand jury and trial testimony. Defendant challenged that award on appeal, claiming that it was improper to include those investigation and witness fees in the award. The Court of Appeals affirmed the restitution award, *State v. Ramos*, 267 Or App 164, 340 P3d 703 (2014), as do we.

The pertinent facts are undisputed. Defendant operated a restaurant on premises that she leased, and, in December 2008, set fire to the restaurant. Within a day, defendant called her insurer, Oregon Mutual Insurance Company (Oregon Mutual), to make a claim for loss to business property. Oregon Mutual investigated the claim and hired attorney Daniel Thenell of the law firm Smith Freed & Eberhard (Smith Freed) in December 2008 to "provide legal guidance to the insurance company to determine its coverage obligations" and to "steer the investigation into the cause and origin of the fire and whether there would be coverage for the fire." At defendant's trial, Thenell testified that his practice included doing "coverage investigations for insurance companies."

Thenell actively participated in Oregon Mutual's investigation of defendant's claim, and he also retained

---

[1] ORS 137.106(1)(a) provides:

"When a person is convicted of a crime *** that has resulted in economic damages, the district attorney shall investigate and present to the court, at the time of sentencing or within 90 days after entry of the judgment, evidence of the nature and amount of the damages. *** If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court."

others to assist him. Those persons included a private fire investigation firm to investigate the cause and origin of the fire, a forensics firm to examine and test electrical components in order to determine the cause and origin of the fire, and a private investigator to take witness statements and gather information. Thenell also ordered a credit check that revealed defendant's financial situation, including the fact that she was behind on her home mortgage.

Oregon Mutual denied defendant's claim approximately one month after the fire, and the state charged defendant with second-degree arson and attempted first-degree aggravated theft. After defendant was convicted of those crimes, the state sought an award of restitution on behalf of Oregon Mutual in the sum of $28,417.98, and the court awarded that sum.[2]

On appeal to the Court of Appeals, defendant objected to two categories of restitution that the trial court had awarded: (1) the attorney fees that Oregon Mutual had paid to Smith Freed, and (2) the expenses that Oregon Mutual had paid for the other investigators' time in investigating defendant's claim and in presenting grand jury and trial testimony. Alternatively, defendant argued that an award of the amounts that Oregon Mutual had paid investigators after it had denied her claim was impermissible. *Ramos,* 267 Or App at 174. According to defendant, those portions of the restitution award violated limitations on liability drawn from civil law and applicable through the statutory definition of "economic damages," ORS 137.103(2), referenced in the criminal restitution statute, ORS 137.106.

The state responded that the challenged categories of restitution met the terms of ORS 137.106 and the definition of "economic damages" found in ORS 137.103(2) in that they were "objectively verifiable monetary losses" that "resulted from defendant's criminal activities." The Court of Appeals agreed. *Id.* at 178-79. In reaching that conclusion, the Court of Appeals rejected defendant's argument that

---

[2] Defendant leased the restaurant and the trial court also ordered defendant to pay restitution to the restaurant owner and the owner's insurer for fire damage to the building in which defendant's restaurant was located; defendant does not challenge the imposition of restitution for those items.

"economic damages," as that term is used in ORS 137.106, are limited to damages that would be recoverable in a civil action and therefore that they must be reasonably foreseeable. The court reasoned that, in amending the restitution statutes in 2005, the legislature had substituted the term "economic damages" for "pecuniary damages." "Pecuniary damages" had been defined to include only "damages that are recoverable in a civil action;" the definition of "economic damages" did not include that phrase. *Id.* at 175. Therefore, the court explained, a court must award as restitution all of a victim's expenses that meet the definition of "economic damages" without regard to whether such expenses would be recoverable in a civil action. Further, the court explained, ORS 137.106 requires that a court award all of a victim's economic damages that "result from" a defendant's criminal activities and that that requirement is met when the damages would not have been incurred "but for" the defendant's criminal conduct. *Id.* at 177. The court concluded that because, in the present case, it was undisputed that "but for defendant's false claim," Oregon Mutual would not have incurred any of the claimed expenses, the trial court had not erred in awarding them. *Id.* at 177-80. The court also reached the same conclusion as to the expenses that Oregon Mutual had incurred after it decided to deny defendant's clam, including the challenged charges relating to grand jury and trial testimony in defendant's criminal case. *Id.* at 178.

In this court, defendant takes issue with the premise from which the Court of Appeals reasoned—that "economic damages," as that term is used in ORS 137.106, are not limited to damages that would be recoverable in a civil action. Defendant argues that when the legislature amended ORS 137.106 in 2005, it did not intend to alter the types of damages that are recoverable in restitution; the legislature intended only to change the terms it used to describe those damages. According to defendant, the legislature intended only to substitute the term "economic damages" for the term "pecuniary damages"; it did not intend to preclude application of civil law concepts that limit the recovery of such damages. Thus, defendant argues, a "but-for" connection between a defendant's crime and a victim's expenses is "necessary but not sufficient to establish that those expenses

are economic damages." Defendant explains that, in a civil action, economic damages also must be reasonably foreseeable and contends that that same limitation applies to "economic damages" awarded as criminal restitution. Likewise, defendant contends, attorney fees and litigation costs are not awarded as damages in a civil action and therefore may not be awarded as damages in a restitution proceeding. Defendant argues that, because the trial court failed to apply those applicable civil law principles, the trial court erred in awarding Oregon Mutual the challenged expenses under ORS 137.106.

The state adopts the reasoning of the Court of Appeals and contends that the causal connection between a defendant's criminal activities and a victim's damages required by ORS 137.106 is factual, "but-for" causation.[3] Nevertheless, the state recognizes that "but-for" causation is not limitless. The state acknowledges that the "factual-causation test also includes a narrow exclusion for losses that are too remote or attenuated," but argues that reasonable foreseeability does not determine the applicability of that exclusion. The state contends that reasonable foreseeability is a civil law concept that is not incorporated in ORS 137.106. The same is true, the state argues, of the civil law principle that bars the recovery of attorney fees and litigation costs in civil actions, absent statutory or contractual authority. That principle, the state asserts, is inapplicable in a restitution proceeding.

Thus, this case requires us to determine whether a criminal restitution award is subject to two limitations on damages drawn from civil law: (1) that damages are limited to harms that result from reasonably foreseeable risks; and (2) that attorney fees and litigation costs are generally not recoverable unless authorized by statute or contract. For

---

[3] In this case, the parties discuss factual causation as "but-for" causation, and we therefore use that terminology. We note, however, that in some circumstances, this court has discussed factual causation as requiring a showing that the conduct at issue was a "substantial factor" in bringing about a result. *See, e.g., Lasley v. Combined Transport, Inc.*, 351 Or 1, 7-8, 261 P3d 1215 (2011) (discussing cause in fact in "substantial factor" terms). Because the parties in this case have discussed factual causation in terms of "but-for" causation, we need not consider whether the factual causation required by ORS 137.106 is limited to "but-for" causation, and we express no opinion on that issue.

the reasons that follow, we conclude, first, that the statutory definition of "economic damages," as used in ORS 137.106, does require, when appropriately raised, a reasonable foreseeability analysis; and second, that we will not apply the civil law bar on the recovery of attorney fees on the circumstances presented in this case.

We begin our analysis with the reasonable foreseeability limitation and the text of ORS 137.106(1)(a), which provides as follows:

> "When a person is convicted of a crime *** that has resulted in economic damages, the district attorney shall investigate and present to the court, at the time of sentencing or within 90 days after entry of the judgment, evidence of the nature and amount of the damages. *** If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court."

Thus, ORS 137.106(1) requires that a defendant pay restitution equal to the full amount of a victim's "economic damages" that "result from" the defendant's criminal activity. ORS 137.103(2) defines the term "economic damages." ORS 137.103(2) provides that the term "economic damages" as used in ORS 137.106 "[h]as the meaning given that term in ORS 31.710, except that 'economic damages' does not include future impairment of earning capacity."[4] ORS 31.710(2)(a) defines "economic damages" as follows:

---

[4] ORS 137.103(2) provides:

"(2) 'Economic damages':

"(a) Has the meaning given that term in ORS 31.710, except that 'economic damages' does not include future impairment of earning capacity; and

"(b) In cases involving criminal activities described in ORS 163.263, 163.264 or 163.266 [concerning involuntary servitude and human trafficking], includes the greater of:

"(A) The value to the defendant of the victim's services as defined in ORS 163.261; or

"(B) The value of the victim's services, as defined in ORS 163.261, computed using the minimum wage established under ORS 653.025 and the overtime provisions of the federal Fair Labor Standards Act of 1938 (29 U.S.C. 201 et seq.)."

"'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."

As is obvious, neither ORS 137.106 nor the definition of economic damages in ORS 31.710(2)(a) requires that the damages awarded in restitution be the damages that would be recoverable in a civil action. The statute requires only that the damages be "objectively verifiable monetary losses" that "result from" a defendant's criminal activity. Nor, the state argues, can such a requirement be imported by means of legislative history. In 2005, when it substituted the definition of "economic damages" for the definition of "pecuniary damages," the legislature eliminated reference to damages "which a person could recover against the defendant in a civil action," and the state argues we should presume that it did so intentionally.

Former ORS 137.106(1) (2003) provided:

"When a person is convicted of a crime *** that has resulted in pecuniary damages, the district attorney shall investigate and present to the court, prior to the time of sentencing, evidence of the nature and amount of such damages. If the court finds from the evidence presented that a victim suffered pecuniary damages, in addition to any other sanction it may impose, the court shall:

"(a) Include in the judgment a requirement that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's pecuniary damages as determined by the court."

Former ORS 137.103(2) (2003), in turn, provided:

"'Pecuniary damages' means all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or

events constituting the defendant's criminal activities and shall include, but not be limited to, the money equivalent of property taken, destroyed, broken or otherwise harmed, and losses such as medical expenses and costs of psychological treatment or counseling."

Thus, the major change made in 2005[5] was to replace "pecuniary damages" (special damages, but not general damages, which a plaintiff could recover against a defendant in a civil action) with "economic damages" as defined in ORS 31.710, while excepting future impairment of earning capacity. That change reflected Oregon's more

---

[5] We recently summarized earlier history of the restitution statutes in *State v. Algeo*, 354 Or 236, 247-48, 311 P3d 865 (2013):

"In 1976, *** this court had interpreted the original version of the criminal restitution statute, *former* ORS 137.540(10) (1975), to permit a trial court to award a victim an amount of restitution that was less than the amount of the victim's loss. *State v. Stalheim*, 275 Or 683, 552 P2d 829 (1976). *Former* ORS 137.540(10) authorized a sentencing court to require, as a condition of probation, that the defendant '[m]ake *reparation* or *restitution* to the aggrieved party for the damage or loss caused by [the] offense, in an amount to be determined by the court.' (Emphases added.) The court interpreted the term 'restitution' to mean 'the return of a sum of money, an object, or the value of an object which a defendant wrongfully obtained in the course of committing the crime.' *Id.* at 687-88. The court interpreted the term 'reparation' to have a broader meaning—'repairing' or 'restor[ing].' However, the court held that both terms encompassed only "reimbursement for the victim's liquidated or easily measurable damages resulting from the charged offense," *id.* at 688, and noted that it '[did] not mean to imply that a judge could not impose restitution or reparation in an amount less than the victim's loss.' *Id.* at 688 n 8.

"In 1999 *** ORS 137.106 (1999), amended by Or Laws 2003, ch 670 § 1—continued to permit trial courts to impose restitution in amounts that were less than a victim's full economic damages. At that time, the term 'restitution' was statutorily defined as the 'full, partial or nominal payment of pecuniary damages to a victim.' ORS 137.103(3) (1999). 'Pecuniary damages,' in turn, were limited to 'special damages *** which a person could recover against the defendant in a civil action' arising out of the defendant's criminal activities.' ORS 137.103(2) (1999). Whether restitution was imposed, and in what amount, was entirely within the sentencing court's discretion. ORS 137.106(1) (1999) (making restitution a discretionary part of a defendant's sentence)."

In 1999, Oregon voters enacted a crime victim's bill of rights, codified at Article I, section 42, of the Oregon Constitution. *See generally State v. Barrett*, 350 Or 390, 255 P3d 472 (2011) (discussing enactment). Article I, section 42, entitles a victim to "receive prompt restitution." The meaning of that provision is not at issue in the present case.

Further changes were made in ORS 137.103 and 137.106 in 2007 and again in 2013, but those changes did not affect the portions of the statutes at issue here. Or Laws 2007, ch 425, § 1, ch 482, § 1, ch 811, § 5; Or Laws 2013, ch 388, § 1.

current nomenclature for damages. As we explained in *Clarke v. OHSU*, 343 Or 581, 608 n 17, 175 P3d 418 (2007):

> "General damages *** now are described as noneconomic damages and encompass nonmonetary losses, including damages for pain and suffering, emotional distress, injury to reputation, and loss of companionship. *See, e.g.,* ORS 31.710(2)(b) (defining noneconomic damages in the context of a statute limiting recovery for noneconomic damages in civil cases). Special damages now are described as economic damages and refer to the verifiable out-of-pocket losses, including medical expenses, loss of income and future impairment of earning capacity, and costs to repair damaged property. *See, e.g.*, ORS 31.710(2)(a) (defining economic damages)."

*See also Bass v. Hermiston Medical Center, P.C.*, 143 Or App 268, 270 n 1, 922 P2d 708 (1996) (after statutory changes made in the 1980s, "the bench and bar appear to have generally equated economic damages with special damages and noneconomic damages with general damages, even though economic damages include some items of loss, such as future impairment of earning capacity, that have historically been styled as general damages").

That history demonstrates that the 2005 amendments to ORS 137.103 and 137.106 updated the nomenclature for damages, but at the same time preserved the historical inclusion of future impairment of earning capacity as an item of "general" rather than "special" damages and excluded it from the scope of the restitution statutes. Those changes indicate that the legislature intended to modernize the labels used to describe the types of damages recoverable as restitution, but also intended to preserve the historical practice of permitting recovery of only what had formerly been known as "special" damages, and "which a person could recover against the defendant in a civil action."

In 2003, when the legislature had amended ORS 137.106 to make the imposition of restitution mandatory rather than discretionary, (Oregon Laws 2003, chapter 670, section 1), then-Representative Floyd Prozanski described the restitution process as a process to allow a victim to ask the criminal court to award the damages that the victim would be able to obtain in a civil action. Prozanski explained

that he approved of the restitution process because it allowed the victim to recover what the victim had a right to receive without having to go through the additional arduousness of a civil case. Audio Recording, House Committee on Judiciary, SB 617, June 26, 2003, http://www.leg.state. or.us/cgi-bin/list_archives.cgi?archive.2003s&HJUD&Judiciary (accessed February 16, 2016).

In 2005, the legislature again amended ORS 137.106, but the 2005 legislative history does not indicate that the legislature viewed restitution proceedings as having a different purpose than that described in 2003.

In 2005, the Attorney General's Restitution Task Force submitted House Bill (HB) 2230 (2005) to the legislature. Fred Boss, then-Chief Counsel of the Department of Justice Civil Enforcement Division, described the bill to a subcommittee of the House Committee on Judiciary and told the subcommittee that the reference in the definition of "pecuniary" damages to special and general damages was confusing. Audio Recording, House Committee on Judiciary, Subcommittee on Civil Law, HB 2230, January 24, 2005, http://www.leg.state.or.us/cgi-bin/list_archives.cgi?archive.2005s&HJCIV&Judiciary+Subcommittee+on+-Civil+Law (accessed February 16, 2016). The committee chair sought clarification that the bill substituted a definition of "economic damages" that was commonly used in tort law and referred to objectively verifiable monetary losses and not things such as pain and suffering. *Id.* (statement of Rep Bob Ackerman, committee chair). Another committee member verified that the definition included property damage. *Id.* (statement of Rep Greg Macpherson); *see also* Exhibit D, House Committee on Judiciary, Subcommittee on Civil Law, HB 2230, January 24, 2005 (written testimony of Jason Barber, Assistant Director, Crime Victim's Assistance Section, Department of Justice) (bill was intended to "clarify the definition of damages," thus increasing a victim's chances of recovering true economic losses). Nothing at that public hearing or in the committee's subsequent work sessions indicated that the definitional changes that the legislature made were meant to expand the scope of damages recoverable as restitution or to change the purpose of restitution proceedings.

The bill passed the House and went on to the
Senate Committee on Judiciary. At a public hearing, Kelly
Skye, representing the Oregon Criminal Defense Lawyers
Association, spoke against the bill, arguing that, as it
was worded at that point, it did, in fact, broaden the prior
definition because ORS 31.710 allowed recover for future
impairment of earning capacity, which would not have qual-
ified as "pecuniary" or "special" damages under the prior
version. Audio Recording, Senate Judiciary Committee,
HB 2230A, May 16, 2005, http://www.leg.state.or.us/cgi-
bin/list_archives.cgi?archive.2005s&SJUD&Judiciary
(accessed February 16, 2016). At a subsequent work session
on the bill, Legislative Counsel Joe O'Leary indicated that
the substitution of the term "economic" for "pecuniary" was
meant to clarify the law but not broaden the scope of dam-
ages that would be recoverable as restitution, and the com-
mittee chair, Senator Ginny Burdick, agreed. As a result of
the concerns raised previously—that incorporation of ORS
31.710 expanded the scope of damages available in restitu-
tion—the bill was amended to specifically exclude future
impairment of earning capacity from restitution, thus pre-
serving that aspect of the prior version of the statute. Audio
Recording, Senate Judiciary Committee, HB 2230A, June
16, 2005, http://www.leg.state.or.us/cgi-bin/list_archives.
cgi?archive.2005s&SJUD&Judiciary (accessed February
16, 2016). What was said about the bill, and the changes
that it underwent during the legislative process, indicate
that the legislature intended to clarify the types of dam-
ages that are recoverable as restitution, but not to differen-
tiate between the "economic damages" that a victim could
recover as damages in a civil action and those the victim
could recover as restitution.

One of the difficulties with the state's position that
a court must discern the meaning of ORS 137.106 without
reference to civil law concepts is that the legislature adopted
for use in restitution proceedings the definition of "economic
damages" that applies in civil actions. And, the word "dam-
ages," as a legal term of art, evolved as a term associated
with a plaintiff's recovery against a defendant in a civil case.
*See, e.g., Black's Law Dictionary* 416 (8th ed 2004) (defining
damages as "[m]oney claimed by, or ordered to be paid to, a

person as compensation for loss or injury <the plaintiff seeks $8,000 in damages from the defendant>"). Although there may be differences in the types of damages that are recoverable at law and those that are recoverable in equity, and in the types of damages that are recoverable in tort claims and those that are recoverable in breach of contract claims, a party seeking damages of any sort seeks those damages in a civil action. *See id.* at 262 (defining "civil" as "[o]f or relating to private rights and remedies that are sought by action or suit, as distinct from criminal proceedings <civil litigation>"). The term "damages" has a civil law connotation.

Likewise, the factual causation that ORS 137.106 requires also is a concept that also derives from civil actions. ORS 137.106 requires that economic damages "result from" a defendant's crime, and "but-for" causation is a civil law concept.[6] *See, e.g., Knepper v. Brown*, 345 Or 320, 330, 195 P3d 383 (2008) (discussing "but-for" causation in reference to intentional tort); *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 339-40, 83 P3d 322 (2004) (discussing "but-for" causation in reference to negligence).

The question that this case presents is whether, in giving meaning to the statutory terms "economic damages" and "result from," a court also must consider an additional concept applicable in civil actions: that there be not only a "but-for" factual connection between a defendant's conduct and damages but also that the damages be reasonably foreseeable. As to that question, the state argues that ORS 137.106 does not explicitly require reasonable foreseeability and that this court cannot insert it. However, the state also concedes that "at some point a causal connection will become so attenuated that it is no longer accurate to say that the crime 'has resulted in' the damages."[7] The state submits

---

[6] The "but-for" rule of causation "may be stated as follows: The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event, if the event would have occurred without it." W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 41, 266 (5th ed 1984).

[7] The state cites *Paroline v. United States*, 571 US ___, 134 S Ct 1710, 1721, 118 L Ed 2d 714 (2014) to explain its position. In that case, the Court observed that

"proximate cause forecloses liability in situations where the causal link between conduct and result is so attenuated that the so-called consequence

that the text of ORS 137.106 imposes a "narrow remoteness limitation" that requires consideration of whether the contested expenses are "too remote to be considered the results of defendant's crime." For her part, defendant agrees that a limit on "but-for" causation is inherent in the words of the restitution statute, but she submits that "the word 'result' connotes the 'rational,' 'necessary' relationship that exists between immediate cause and effect." And, unlike the state, defendant also contends that dictionary definitions are not the only source of a limitation on a court's award of expenses that are "too remote." Defendant argues that the required causal connection should be analyzed by reference to tort law, and specifically draws our attention to the connection that must be shown to establish liability for negligence, citing *Fazzolari v. Portland School Dist No IJ*, 303 Or 1, 734 P2d 1326 (1987), a case that framed the inquiry in terms of reasonable "foreseeability."

We agree with defendant that the legislature's cross-reference to the definition of "economic damages" applicable in civil actions, and the legislature's purpose in creating the restitution procedure as a substitute for a civil proceeding, make civil law concepts relevant to our interpretation of ORS 137.106. *Fazzolari,* although not directly applicable, is informative. *Fazzolari* is a negligence case in which the defendant advanced an argument that under the factual circumstances presented in that case, it had no "duty" to the plaintiff and so could not be held liable for its conduct. 303 Or at 3. The court explained that limitations on liability generally found in civil causes of action, historically referred to as "duty" and "proximate cause" in many jurisdictions, should generally be discussed in terms of reasonable "foreseeability" in Oregon law.[8] *Id.* at 11-12. Accordingly, the

is more akin to mere fortuity. For example, suppose the traumatized victim of [a criminal defendant] needed therapy and had a car accident on the way to her therapist's office. The resulting medical costs, in a literal sense, would be a factual result of the offense. But it would be strange indeed to make a defendant pay restitution for these costs."

[8]  As we explained in *Wright v. Turner*, 354 Or 815, 833, 322 P3d 476 (2014):

"'Proximate cause' is defined as a 'cause that is legally sufficient to result in liability; an act or omission that is considered in law to result in a consequence, so that liability can be imposed on the actor.' *Black's Law Dictionary* 234 (8th ed 2004). As Prosser explains, 'legal responsibility must be limited

court said, "common-law negligence imposes liability for harms of the general kind and to plaintiffs of the general class placed at risk, harms that a reasonable factfinder, applying community standards, could consider within the range of foreseeable possibilities." *Id.* at 12-13. Thus, under *Fazzolari,* reasonable foreseeability determines a defendant's responsibility for its conduct and the kinds of harm for which a defendant may be held liable.

In a criminal case, the same inquiry may not be necessary. By statute, the legislature will have established the conduct and the mental state that define the crime. A court, often following a jury verdict, already will have determined the defendant's criminal responsibility. In awarding restitution as a sanction, then, a court will have no need to determine whether a defendant who has violated the statute should be held responsible for harm that the statute identifies. In most instances, the legislature already will have made both of those determinations. Thus, taking this case as an example, ORS 164.315 makes it a crime for a person to start a fire and intentionally damage the property of another in the circumstance in which the damages exceed $750. That criminal statute imposes criminal responsibility for damage to the property of another and a court need not look beyond that criminal statute to determine that it may award, as restitution, the property damages that resulted from the defendant's criminal acts. Thus, a *Fazzolari* inquiry is neither necessary nor required.

That does not mean, however, that the concept of reasonable foreseeability is inapplicable in a restitution proceeding. The question that this case presents is not whether the trial court was correct to award some "economic damages" as restitution; certainly it was. As noted, defendant does not challenge the aspect of the court's restitution award that required that she pay the restaurant owner and the owner's insurer for fire damage to the building in which

---

to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act ***.' [W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 41 (5th ed 1984)]. In Oregon, we determine that boundary by whether the consequential injury is foreseeable."

(Ellipsis in *Wright*; bracketed material added; citation omitted).

defendant's restaurant was located. The narrower question that this case presents is whether the civil law concept of reasonable foreseeability is a concept that a court must consider in deciding whether the particular kinds of harm sought as restitution are recoverable. Thus, again taking second-degree arson as an example, suppose that the state were to seek not only an award of restitution for damage to the victim's property, but also the medical expenses that the victim incurred when, in the course of responding to the building's fire alarm, the victim was injured in a car accident. Those circumstances would present the narrower question at issue in this case: whether reasonable foreseeability is a limiting concept that a court must consider in deciding whether to award the particular damages sought as restitution.

We conclude that reasonable foreseeability is a limiting concept that applies to an award of economic damages under ORS 137.106. The general rule in civil actions is that damages are only recoverable if they are reasonably foreseeable. *Welch v. US Bancorp*, 286 Or 673, 703, 596 P2d 947 (1979) (discussing contract damages); *see also Joseph Forest Products v. Pratt*, 278 Or 477, 564 P2d 1027 (1977) (same, in context of negligence claim); *Selman v. Shirley*, 161 Or 582, 615, 91 P2d 312 (1939) (a defrauded party is entitled to damages that "naturally and proximately resulted from the fraud"). As the parties acknowledge, when the legislature required that a defendant make restitution to a victim for the victim's "economic damages," the legislature did not intend to require an award in circumstances in which the damages are so attenuated that they cannot reasonably be understood to "result from" a defendant's conduct. The legislature adopted the definition of "economic damages" that applies in civil actions and described the required causal connection between a defendant's criminal activities and a victim's damages in terms that are used in civil actions. We can presume that the legislature was cognizant of the limitation that the civil law imposes on the recovery of such damages. *See Blachana, LLC v. Bureau of Labor and Industries,* 354 Or 676, 691, 318 P3d 735 (2014) (court will presume that legislature is aware of existing common law). Therefore, we think it likely that the legislature intended

to apply the traditional civil law concept of reasonable foreseeability to determine whether claimed damages are "too remote" rather than intending that some other test of "remoteness" apply.

In the civil law, the test that a court uses to determine whether damages are too attenuated to be recoverable is whether a reasonable person in the defendant's position would have foreseen that someone in the victim's position could reasonably incur damages of the same general kind that the victim incurred. *Cf. Stewart v. Jefferson Plywood Co.,* 255 Or 603, 608-09, 469 P2d 783 (1970)(limiting liability to harms that are of the general kind to be anticipated from the tortious conduct). That is the test that we conclude the legislature intended to impose for use in restitution proceedings. In arriving at that conclusion, we do not interpret ORS 137.106, as the state would have us do, to impose a "*narrow* exclusion" for losses that, in a court's opinion, are "too remote or attenuated," nor do we interpret the statute to require, as defendant proposes, a "*robust* connection" between the defendant's criminal activities and the victim's expenses or that the causal connection be "*direct.*" The use of those adjectives would imply a conclusion; it would not add to the analysis. Instead, we interpret ORS 137.106 to impose a requirement of reasonable foreseeability that is, as a general matter, a factual question for the court. *Cont. Plants v. Measured Mkt.* 274 Or 621, 625-26, 547 P2d 1368 (1976).

In this case, defendant did not argue to the trial court that, as a factual matter, it was not reasonably foreseeable that Oregon Mutual would pay attorneys and investigators for the time that they spent investigating defendant's claim for benefits and in providing grand jury and trial testimony. Instead, the premise of defendant's argument was that Oregon Mutual's expenditures were not reasonably foreseeable as a matter of law. We disagree. The record shows that within a day of a fire that destroyed business property at her restaurant, defendant called Oregon Mutual to make a claim for insurance benefits. Oregon Mutual hired an attorney whose practice was to "provide legal guidance to the insurance company to determine its coverage obligations" and to help "steer the investigation into the cause and origin of the fire and

whether there would be coverage for the fire." That attorney testified that he often performed similar services for insurance companies and that he routinely hired others to assist him in his investigation. The record does not establish that Oregon Mutual's expenses were not reasonably foreseeable as a matter of law. In fact, as defendant acknowledges, "[i]t is generally reasonably foreseeable that when an insured makes a claim on an insurance policy, the insurance company will investigate the circumstances to determine whether the claim is legitimate and must be paid."[9] *See, e.g.,* ORS 742.206 - 742.242 (setting forth standard fire insurance policy provisions and procedures).

Given defendant's acknowledgement, it may be that defendant's stronger argument is an argument that the Court of Appeals described as her "alternative argument"; that is, that the fees and costs that Oregon Mutual incurred *after* it denied defendant's claim are not recoverable. Although defendant does not use reasonable foreseeability terms in describing that argument, it can be understood as an argument that it was not reasonably foreseeable that Oregon Mutual would continue to investigate defendant's claim for benefits after it had denied her claim. However, even if defendant had made such an argument, we could not conclude, as a matter of law, that Oregon Mutual's expenditures after its claim denial were not reasonably foreseeable as a matter of law, particularly given an insured's right to challenge an insurer's denial. *See, e.g.,* ORS 742.238 - 742.240 (fire insurance provisions concerning when loss is payable and when insured may challenge claim denial). An argument that fees and cost were not reasonably foreseeable must be made, in the first instance, to a trial court for its factual determination.

In addressing defendant's arguments thus far, we have focused on the civil law concept of reasonable

_____

[9] We emphasize that we are discussing reasonable foreseeability in the context of the circumstances of *this* case. We do not hold that, as a general matter, it is reasonably foreseeable that a victim in a criminal case will incur investigation expenses. Rather, it is the nature of the criminal activity at issue here (attempted fraud), the nature of the victim's business (insurance), and the facts of the case, that govern the determination whether the claimed investigation expenses were foreseeable.

foreseeability. We do so because reasonable foreseeability is a concept on which defendant has relied and not because we mean to foreclose consideration of other civil law concepts in future cases. For instance, in this case, defendant did not argue to the trial court that Oregon Mutual's expenses were unreasonable in amount, *see* ORS 31.710(2)(a)*,* or were otherwise barred.[10] For that reason, we do not address such other civil law principles.[11]

We do, however, turn our attention to the second civil law principle that defendant raises in this court: that is, that attorney fees and costs that a party incurs in a civil action are not "economic damages" that are recoverable that a civil action. Accordingly, defendant contends, such expenses also are not recoverable as restitution. Defendant asserts that, as used in ORS 137.106, the term "economic damages" does not encompass attorney fees and litigation costs; when a party prevails in a civil action and seeks an award of attorney fees or litigation costs, the fees or costs are

---

[10] On review, defendant makes a brief argument suggesting that some of the investigation costs that were claimed as restitution here should not have been recoverable because they exceeded the amount that defendant had attempted to steal from the victim, and a victim's "decision to spend significantly more than the amount stolen cannot be described as a reasonably foreseeable consequence of the initial wrongful conduct." That argument was not preserved and may be contradicted by the record. There was evidence that Oregon Mutual could have been liable under the policy for up to $74,000.

Defendant also briefly asserts that a party who "makes a claim on a policy—whether the claim is fraudulent or legitimate—does not create extra work for the insurance company," and thus the cost of investigating claims cannot be recovered as economic damages. Although defendant cites no authority for that proposition, it is possible that she is referring to the general rule that "when the injury is to a business, the cost of doing business is not generally recoverable, because it cannot be said that the cost is attributable to defendant's [tort]; overhead is a fixed expense to the injured party both before and after the injury." *McKee Electric Co. v. Carson Oil Co.*, 70 Or App 1, 7-8, 688 P2d 1360 (1984), *aff'd on other grounds*, 301 Or 339, 723 P2d 288 (1986). That argument was not preserved and defendant made no record demonstrating that the expenses that Oregon Mutual incurred were part of its general cost of doing business. We therefore do not address that argument.

[11] We also do not mean to imply that the recovery of "economic damages" makes a restitution proceeding into a civil proceeding. Restitution is a penalty that serves a penal purpose. As the court stated in *State v. N.R.L.*, 354 Or 222, 226, 311 P3d 510 (2013), "the theory behind restitution is ultimately 'penalogical: It is intended to serve a rehabilitative and deterrent purpose by causing a defendant to appreciate the relationship between his criminal activity and the damage suffered by the victim.'" (Quoting *State v. Hart*, 299 Or 128, 138, 699 P2d 1113 (1985).

awarded pursuant to statute or contract but not as an element of "damages." Defendant asserts that the same should hold true for victims in restitution proceedings. According to defendant, victims are entitled, under ORS 137.106, to an award of "economic damages," but that term should be defined as it is in the civil arena and should not include the attorney fees or litigation costs that a victim incurs in a criminal proceeding.

Defendant's argument fails because it overstates the civil law limitation on the recovery of attorney fees. Defendant is correct that, in a civil action, a party is generally not entitled to an award of attorney fees or litigation costs that that party incurs in that action, unless a statute or contract allows for such recovery. *Montara Owners Assn. v. La Noue Development, LLC*, 357 Or 333, 360, 353 P3d 563 (2015); s*ee also Baker Botts L.L.P. v. ASARCO LLC*, 573 US ___, 135 S Ct 2158, 2164, 192 L Ed 2d 208 (2015) (acknowledging the "bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."). Although that limitation *generally* applies, its application in any particular case depends on the specific claims and facts at issue. For example, when a plaintiff brings a claim against a defendant for damages, the plaintiff may seek, as an element of damages, attorney fees and costs that the plaintiff incurred in litigation with a third party. *Montara*, 357 Or at 360, *see also Huffstuter v. Lind*, 250 Or 295, 301, 442 P2d 227 (1968) ("[A]ttorney fees are generally allowable as damages in an action against a defendant where the defendant's tortious or wrongful conduct involved the plaintiff in prior litigation with a third party."); Dan B. Dobbs, 2 *Law of Remedies* § 9.2(3) (2d ed 1993) (If a defendant's fraudulent misrepresentation causes "the plaintiff to litigate with third person, then the reasonable expenses of that litigation, including the plaintiff's own attorney fees, are recoverable as items of damages consequent upon the misrepresentation").

In *Osborne v. Hay*, 284 Or 133, 141, 585 P2d 674 (1978), this court explained that the American Rule applies only to an award of fees incurred in litigation between two parties and not to fees incurred by one of those parties in separate litigation with a third party. In doing so, the

court quoted from the *Restatement (First) of Torts* § 914, 591 (1939), which notes that third party litigation may include a separate action brought by the state:

> "'A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney fees and other expenditures thereby suffered or incurred.'

"Comment A states that:

> "'The rule stated in this Section applies where the preceding action was brought either by a third person or by the State and also where the present plaintiff has been led by the defendant's tort to take legal proceedings against a third person. * * * '"[12]

Thus, although a party to a civil action will generally recover the attorney fees and costs incurred in that action only if a statute or contract permits their recovery *qua* fees and costs, there are instances in which attorney fees and litigation costs incurred in separate litigation may be recovered as an element of a plaintiff's damages. Defendant's argument that the term "economic damages" necessarily excludes attorney fees and litigation costs is without merit.

We also reject defendant's further argument that the American Rule nevertheless should apply by analogy in restitution proceedings as not applicable to this case Here, even if we were to apply the American Rule, it would not bar recovery of the attorney fees and costs that Oregon Mutual incurred. Those fees and costs fall into two categories—attorney fees and costs that Oregon Mutual incurred in hiring an attorney and non-attorney investigators to investigate defendant's claim for benefits, and costs that Oregon Mutual incurred when it paid its non-attorney investigators

---

[12] The *Restatement (Second) of Torts* § 914, 492 (1974), contains a very similar provision, and the comment indicates that the subsection is applicable "when the preceding action was brought against the present plaintiff either by a third person or by the state, and also when the present plaintiff has been led by the defendant's tort to take legal proceedings against a third person." *Id.* 493, § 914, comment b.

for their time in giving grand jury and trial testimony in defendant's prosecution.

The fees that Oregon Mutual incurred in employing Smith Freed to investigate defendant's claim for benefits were not fees that Oregon Mutual paid to have an attorney represent it in litigation against defendant; they were expenses that Oregon Mutual incurred because defendant filed a claim for benefits and Oregon Mutual had to decide whether to pay that claim. The American Rule would not bar the recovery of those attorney fees and non-attorney investigative costs.

The second category of litigation costs at issue here concerns the costs that Oregon Mutual paid to its non-attorney investigators for their time giving testimony in the underlying criminal prosecution of defendant. As discussed above, a restitution hearing takes place after a defendant has been convicted of a crime; it is a proceeding in which the state seeks, as a sanction, an award of the damages that the victim could recover if the victim were a plaintiff in a hypothetical civil action suing the defendant for defendant's criminal/tortious conduct. Defendant argues that if a victim were to bring a tort action for damages, the victim, as plaintiff, would not be able to recover the litigation costs incurred in that action as damages and that a victim in a restitution proceeding should be subject to the same limitation. What defendant fails to recognize, however, is that if a victim were to bring such a tort claim, the American Rule would not preclude the victim from recovering fees and costs that the victim incurred as a result of the victim's involvement in a separate proceeding, such as a criminal proceeding to prosecute the defendant tortfeasor for a crime. *See Osborne*, 284 Or at 141 (quoting *Restatement (First) of Torts* § 914, 591 (1939)). Therefore, even if the American Rule were to apply in restitution proceedings by analogy, an issue we reserve and do not decide, that rule would not preclude a victim from recovering attorney fees and costs that the victim incurred as a result of the victim's involvement in the underlying criminal prosecution. A victim in a restitution proceeding is not required to bring a separate tort action to obtain an award of damages, and therefore the prosecution of the defendant and the award of damages occur in the

same criminal proceeding. We conclude, however, that the combined procedure does not deprive the state from seeking, on behalf of the victim, the same damages that the victim could have obtained if the victim had filed a separate action, and that those damages may include attorney fees and litigation costs that the victim incurred in the underlying criminal prosecution.[13]

That does not mean, however, that attorney fees and litigation costs that a victim incurs in connection with an underlying criminal prosecution are necessarily recoverable in a restitution proceeding. Like all economic damages, such fees and costs must "result from" a defendant's criminal activity in the "but-for" sense and also must be a reasonably foreseeable result of the defendant's criminal activities. That will not always be the case. To take an extreme example, consider an instance in which police officers investigate a defendant's criminal activity and, in the course of that investigation, discover not only that the defendant committed a crime against the victim but also that the victim herself committed an entirely unrelated crime. In that instance, if the victim sought restitution for the economic damages that she incurred as a result of the defendant's crime and included, as requested restitution, the attorney fees that she incurred in defending herself against criminal charges, a trial court potentially could find that the victim's crime would not have been discovered but for the defendant's criminal activity and therefore that there was a factual connection between the fees and the defendant's conduct. In that situation, however, the victim's own criminal activity, prosecution and defense may not have been reasonably foreseeable, and a trial court could decide not to award those costs as "economic damages" payable by the defendant.

In this case, defendant did not argue in the trial court that the attorney fees and costs that Oregon Mutual incurred either in investigating defendant's fraudulent insurance claim or in compensating its investigators for their time in grand jury and trial proceedings were not

---

[13] In this case, Oregon Mutual does not seek to recover attorney fees incurred in the restitution proceeding itself, and, as noted, we do not decide whether such fees and litigation costs would be recoverable.

reasonably foreseeable as a matter of fact or as a matter of law. *See* ORS 476.270 (requiring insurer to report suspected arson to State Fire Marshall); ORS 731.592(1) (regarding insurer's duty to cooperate with law enforcement in investigating or prosecuting suspected criminal conduct involving insurance). We therefore do not address those issues.

In summary, we conclude that (1) a court is precluded from awarding, as "economic damages" under ORS 137.106, expenses that the court concludes were not the result of reasonably foreseeable risks of harm; (2) a victim's attorney fees and litigation costs may, in an appropriate case, constitute "economic damages" under ORS 137.106; and (3) the trial court did not err in its award of restitution in this case.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.