Submitted September 2, affirmed December 8, 2021, petition for review denied February 24, 2022 (369 Or 338)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RYAN CHARLES VENABLE,
aka Ryan Venable,
*Defendant-Appellant.*

Multnomah County Circuit Court
18CR03774; A172781

502 P3d 250

In this criminal appeal, defendant contests the trial court's imposition of restitution for certain ride-sharing app driver fees assessed to the victim following defendant's theft of the victim's cellphone. On appeal, defendant argues that those ride-sharing app driver fees were not a reasonably foreseeable consequence of stealing a cellphone and that the fees were not necessarily incurred by the victim. *Held*: The Oregon restitution statute allows a trial court to impose restitution in cases where there was criminal activity, economic damage, and a causal relationship between the two. In this case, there was sufficient evidence in the record for the trial court to conclude that the victim necessarily incurred the driver fees due to the theft of his cellphone. The pervasive nature of modern cellphones, coupled with the breadth and depth of access to a person's life available through such phone, means that a broad range of harms are reasonably foreseeable consequences of criminal activity involving another's cellphone. In this case, the driver fees were of the same general kind of harm that is a reasonably foreseeable consequence of depriving a person of their cellphone. Therefore, the trial court did not err by imposing restitution.

Affirmed.

Leslie M. Roberts, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Eric Johansen, Deputy Public Defender, Office of Public Defense Services filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joseph Callahan, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

JAMES, J.

Affirmed.

**JAMES, J.**

Defendant pleaded guilty to third-degree theft, ORS 164.043. He appeals a supplemental judgment ordering him to pay $381.66 in restitution to the victim, B. Defendant argues that the trial court erred when it concluded that certain "Lyft fees" were a reasonably foreseeable consequence of the criminal conduct, that the fees were necessarily incurred by B, and that the damages were reasonable. We conclude that evidence in the record supports the imposition of restitution and accordingly affirm.

"We review whether a trial court complied with the requirements for imposing restitution for errors of law." *State v. Buswell*, 308 Or App 389, 390, 479 P3d 341 (2021).

Although the question of whether the prerequisites for imposing restitution have been met is a question of law, an award of restitution is supported by, and dependent upon, the trial court's findings of fact. *Id.* "We will uphold the trial court's findings of fact so long as there is any evidence in the record to support them" and we view the evidence supporting the restitution order in the light most favorable to the state. *Id.* If the trial court did not make an express finding on a disputed fact, we assume that the court decided those facts consistent with the judgment imposing restitution. *State v. Lobue*, 304 Or App 13, 16, 466 P3d 83, *rev den*, 367 Or 257 (2020). We state the facts accordingly.

On November 6, 2017, defendant stole B's cellphone. The phone was returned to B sometime on November 7 or 8. Although B worked as a security officer, he also drove for Lyft. At the time, B's arrangement with Lyft provided him a rental car, which, if he met a weekly quota for rides, was provided "for free." Additionally, there were certain fees, payable to Lyft, that "kick[] in *** during that week [if] you don't do enough rides." B said that he could only access his Lyft driver account through his cellphone, and so for the two days (November 6 and 7) his phone was missing, he could not drive for Lyft. B claimed that, as a result of the two days of missed rides, Lyft charged him $208.99 for the rental car, as well as fees of $172.67. B also testified that if he had completed more rides during the week, Lyft would not have assessed the fees or car rental charge.

Imposition of restitution in criminal cases arises under statute. ORS 137.106. A trial court is required by that statute to "award restitution when a person is convicted of a crime that the court finds resulted in economic damages to the victim." *Lobue*, 304 Or App at 14. Under ORS 137.106, a trial court awards restitution "when three prerequisites are met: (1) criminal activities; (2) economic damages; and (3) a causal relationship between the two." *State v. Andrews*, 366 Or 65, 69, 456 P3d 261 (2020) (footnote omitted). Defendant's assignment of error challenges the economic damages and causation requirements.

As to economic damages, defendant argues that B did not "necessarily incur" the Lyft fees and car rental costs as a result of defendant's criminal conduct, relying upon *State v. Steckler*, 236 Or App 524, 237 P3d 882 (2010), where we determined that there was insufficient evidence in the record to support imposition of restitution because the state failed to prove that the victim was required to take any particular security measure as a result of defendant's robbery of a pharmacy. *Id.* at 528-29. In that case, it was the victim's choice, not a requirement, to install security cameras; thus, while the victim had incurred costs, those costs were not *necessarily* incurred. *Id.* at 529.

Here, B's inability to drive for Lyft is more akin to lost work, than a choice to install a security system. While gig economy workers may, arguably, be afforded flexibility in deciding whether or not to perform tasks on a particular day, those are not chosen leisure activities, they are work. Few among us can choose not to work. B testified that the two days he missed driving for the week made him subject to both the Lyft fees and the rental car cost. As such, there was evidence in the record to demonstrate that, due to defendant's criminal conduct, B was unable to discharge the terms of the Lyft agreement, thus making him "liable or subject to" that expense.[1] *See id.* at 528.

Turning to the causal relationship, as the Oregon Supreme Court explained, "[w]hen determining causation, a

---

[1] Although the trial court did not make an explicit finding as to whether B's expenses were necessarily incurred, we assume that the court resolved that issue consistent with the imposition of restitution. *Lobue*, 304 Or App at 16.

trial court must determine whether there is a 'but-for' connection between the victim's damages and the crime and whether the victim's economic damages were a reasonably foreseeable result of the defendant's crime." *Andrews*, 366 Or at 70-71. "When a statute does not impose criminal responsibility for the type of harm that occurred, 'reasonable foreseeability is a limiting concept that a court must consider in deciding whether to award the particular damages sought.'" *State v. Alonso*, 284 Or App 512, 519, 393 P3d 256 (2017) (quoting *State v. Ramos*, 358 Or 581, 596, 368 P3d 446 (2016)). As framed by the parties, the harm in this case is not the kind of harm that is prohibited by the third-degree theft statute,[2] therefore, we must determine whether the "traditional civil law concept of reasonable foreseeability" would make the relationship between the criminal conduct and the economic damages "too attenuated to be recoverable." *Ramos*, 358 Or at 596-97.

The longstanding test to determine whether that relationship is too attenuated to support recovery of damages is "whether a reasonable person in the defendant's position would have foreseen that someone in the victim's position could reasonably incur damages of the same general kind that the victim incurred." *Id.* at 597.

Defendant argues that "[a] reasonable person in defendant's position could not have expected that stealing the phone [from] a security worker at an office building would lead to liability for the weekly fee for a Lyft rental car and the weekly fee for a Lyft driver." The problem with defendant's conception of foreseeability is that it frames foreseeability in terms of the predictability of the sequence of events, which is not the proper test. "In the civil law, the test that a court uses to determine whether damages are too attenuated to be recoverable is whether a reasonable person in the defendant's position would have foreseen that someone

---

[2] Third-degree theft requires an act that deprives another of property. *See* ORS 164.015 (defining theft); ORS 164.043(1)(b) (limiting third-degree theft to property value of less than $100). "Property" as defined for purposes of third-degree theft "means any article, substance or thing of value, including, but not limited to, money, tangible and intangible personal property, real property, choses-in-action, evidence of debt or of contract." ORS 164.005(5). Neither side argued that the Lyft and car rental fees were "property" within the meaning of that provision.

in the victim's position could reasonably incur damages *of the same general kind* that the victim incurred. \* \* \* That is the test that we conclude the legislature intended to impose for use in restitution proceedings." *Ramos*, 358 Or at 597 (emphasis added).

We accepted as reasonably foreseeable the relationship between a bank robbery and the victim's use of sick time immediately following the robbery to recover from the trauma. *Buswell*, 308 Or App at 394. The facts in *Buswell* trace a foreseeable causal chain between the criminal conduct (robbing a bank and pointing a gun at the victim), the intermediate harm (victim testified she had anxiety and needed to take time off of work to deal with trauma), and the economic loss (use of sick days for robbery trauma required victim to use other leave to care for sick child). *Id.* at 390.

Similarly, we concluded that lost wages incurred by family members to give victim impact statements at a sentencing hearing were reasonably foreseeable consequences of the defendant's first-degree manslaughter criminal conduct. *State v. Skeen*, 309 Or App 288, 293-94, 481 P3d 402 (2021). Even though the sentencing hearing occurred more than four years after the killing, those lost wages were not, as a matter of law, unforeseeable. *Id.* Although *Skeen* demonstrated a far longer time between the criminal conduct and the economic damages than *Buswell*, there was sufficient directness in the logical relationship between the two to support imposition of restitution.

Mobile phones, particularly the smart phones required to drive for Lyft, are "a pervasive and insistent part of daily life." *Riley v. California*, 573 US 373, 385, 134 S Ct 2473, 189 L Ed 2d 430 (2014); *see State v. Mansor*, 363 Or 185, 201-02, 421 P3d 323 (2018) (discussing *Riley* in context of Oregon law). Our phones present an unparalleled access to our lives and to our livelihoods. Beyond the personal information stored on the device, they can provide maps to a person's home, access their bank accounts, health records, and other sensitive personal information. *Riley*, 573 US at 395-96. And beyond the data stored or accessible through the device, the device itself serves as a primary communication device for many people or access to the tools of their trade.

The breadth and depth of access to a person's life that a mobile phone represents, coupled with the pervasive nature of the devices, means that the theft of a cellphone calls to mind a wide array of potential damage. Accordingly, it is not *per se* unreasonable for a factfinder to conclude that depriving another of that device could entail the "general kind" of damages—particularly in a time period following the theft when replacement of the device might not reasonably be expected—such as an inability to access one's work information or credentials that could be stored on the phone. Thus, while a trial court, acting as factfinder in assessing restitution, is not obligated to find causation in such instances, we cannot say, as a matter of law, that the specific harms of Lyft and rental car fees incurred as a result of stealing a person's mobile phone are outside the general kind of foreseeable damages. *See Jennewein v. MCIMetro Access Transmission Services*, 308 Or App 396, 402, 481 P3d 939 (2021) ("We have emphasized that ordinarily, foreseeability is a fact question * * *." (Internal quotation marks and brackets omitted.)).

In sum, we cannot conclude that, as a matter of law, the Lyft fees or rental car charges in the days following the theft were outside the spectrum of damages that may reasonably follow from stealing a person's mobile phone. Since there is evidence in the record that supports each of the prerequisites needed to impose restitution—criminal conduct, economic damages, and causal relationship—the trial court's order so doing was not erroneous.

Affirmed.