No. 529　　　　　June 11, 2025　　　　　257

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MAITLAND KAHIKINAOKALA KAMAUNU,
aka Maitland Kahikinaokala Kamanu,
aka Maitland Kahikinaokala Kamauna,
aka Maitland Kamaunu,
aka Maitland K. Kamaunu,
aka Maitland-Anthony Kahikina O Ka L Kamaunu,
*Defendant-Appellant.*

Jackson County Circuit Court
21CR41133; A180381

Lorenzo A. Mejia, Judge.

Argued and submitted August 28, 2024.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Pagán, Judge, and O'Connor, Judge.*

PAGÁN, J.

Affirmed.

------------

\* O'Connor, Judge *vice* Mooney, Senior Judge.

**PAGÁN, J.**

In this criminal case, defendant appeals from a supplemental judgment imposing restitution for a cell phone he destroyed. In defendant's sole assignment of error, he asserts that the trial court erred when it imposed $599.99 in restitution (reflecting the phone's contract price), rather than the fair market value of the phone. Defendant did not object to the value of the phone below and asks us to undertake plain error review. We agree that the error is one of law, but we conclude that any error is not obvious, because there is more than one way to award restitution, and there are open questions about how best to award restitution for a cell phone. Therefore, the error is not plain, nor would we exercise our discretion to correct the error. Accordingly, we affirm.

We review an order for restitution for legal error and are "'bound by the trial court's factual findings if they are supported by any evidence in the record.'" *State v. McClelland*, 278 Or App 138, 141, 372 P3d 614, *rev den*, 360 Or 423 (2016) (quoting *State v. Pumphrey*, 266 Or App 729, 730, 338 P3d 819 (2014), *rev den*, 357 Or 112 (2015)).

During a domestic dispute in August 2021, defendant grabbed K's phone out of her hands and threw it on the ground repeatedly, effectively destroying it.[1] Defendant then tackled and injured K. After a bench trial, the trial court found defendant guilty of coercion, ORS 163.275 (Count 1); criminal mischief in the second degree, ORS 164.365 (a lesser included offense of Count 2); and assault in the fourth degree constituting domestic violence, ORS 163.169 (Count 3), and entered a supplemental judgment for restitution. Defendant appealed, *State v. Kamaunu* (CA A177338), and pursuant to a joint motion by the parties, in an order dated October 12, 2022, we reversed and remanded the supplemental judgment containing the restitution award because it had been entered without notice or a hearing. On remand, the state called K, who testified to her economic damages.

K purchased the phone in March 2020, 17 months prior to the attack. K paid $599.99 for the phone on credit,

---

[1] The phone retained some functionality, in that its screen still turned on and that it was still receiving text messages. But the screen and back were cracked, and the volume buttons no longer worked.

with a downpayment of $180. Following the attack, K purchased a new phone and paid off the contract on the destroyed phone. At the restitution hearing, the state asked for $1,023.79, which included the $599.99 contract price[2] of the destroyed phone, $364.90 in emergency room costs, and $58.90 in personal medical expenses. Defendant does not now dispute the various medical expenses. At the hearing, defendant did not object to the $1,023.79 figure, and did not otherwise challenge the value of the phone.[3]

On appeal, defendant asserts that the trial court erred by awarding $599.99 in restitution for the phone. "Under Oregon law, restitution is to be awarded when a defendant has been convicted of a crime that results in economic damages to the victim and the state has presented evidence of those damages." *State v. Aguirre-Rodriguez*, 367 Or 614, 618, 482 P3d 62 (2021) (citing ORS 137.106(1)(a)). The state bears the burden of proof. *Id.* "[T]he economic damages that may be awarded as restitution are objectively verifiable out-of-pocket losses that a person could recover against the defendant in a civil action arising out of the defendant's criminal activities." *State v. De Verteuil*, 304 Or App 163, 167, 467 P3d 80 (2020) (internal citations omitted).

Defendant focuses his argument on the following phrase in *De Verteuil*: "the amount of restitution is the reasonable market value of the property at the time and place of the criminal conduct causing the destruction, plus interest from that time forward." *Id.* at 168. He argues that the contract price of the phone does not reflect its reasonable market value after 17 months of use. Defendant concedes that he did not preserve that argument and asks for plain error review. ORAP 5.45(1). A plain error is (1) an error of law that is (2) obvious and not reasonably in dispute, and (3) apparent on the record. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). It is not clear to us that the error

---

[2] We do not say "purchase price" or "sticker price," because phone contracts often include a discounted price in exchange for the consumer's commitment to stay with a particular provider. The record does not reveal whether K had such an arrangement.

[3] During trial, defendant objected to a discussion about the cost of K's new phone and noted that "the question is how much [the old] phone was worth and not how much she replaced it [for]," but defendant did not re-raise the issue at the restitution hearing.

is obvious because there is more than one way to award restitution, and there are open questions about how best to award restitution for a cell phone.

While *De Verteuil* takes a market value approach,[4] there are other ways to award restitution. *See Hayes Oyster Co. v. Dulcich*, 170 Or App 219, 228, 12 P3d 507 (2000) (just compensation for a loss is sometimes *not* market value); ORS 31.705(2)(a) ("'Economic damages' means objectively verifiable monetary losses including but not limited to *** reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."); *State v. Boyar*, 328 Or App 678, 680, 538 P3d 1225, *rev den*, 371 Or 771 (2023) (affirming award of replacement cost rather than repair cost where the defendant smashed the doors of a public building, and testimony indicated that repairing the doors would have cost more than replacement). *Boyar* also clarified that *De Verteuil* "does not stand for the proposition that the correct measure of damages is always the reasonable market value of the property." *Boyar*, 328 Or App at 681. Rather, the proper measure is "what amount a victim could recover against the defendant in a civil action arising out of the defendant's criminal activities," of which market value is but one tool of achieving that end. *Id*. (internal citations omitted).

We acknowledge that *Boyar*'s application has been focused on damage to real property, not personal property. *See State v. Page*, 330 Or App 672, 678, 544 P3d 421 (2024) (discussing *Boyar* and damage to real property). But it is not the only area of restitution which features diverging approaches. *Compare State v. Pool*, 338 Or App 19, 565 P3d 73 (2025) (replacement costs upheld because the defendant's criminal conduct directly resulted in the need to replace all four tires of a car, even though the defendant had only slashed two), *with State v. Bolds*, 306 Or App 121, 473 P3d

---

[4] Even within the market value approach, a narrow category of items are subject to exception: "personal effects, such as household furniture." *Hayes Oyster Co. v. Dulcich*, 170 Or App 219, 227, 12 P3d 507 (2000) (also noting that alternative valuation may be appropriate for items which have no market); *see De Verteuil*, 304 Or App at 168 (defining household furniture and household goods). We have not determined, and do not now determine, whether cell phones are personal effects.

564 (2020) (restitution was erroneously based on the market value of the victim's replacement vehicle instead of the reasonable market value of the damaged vehicle at the time of the crash).

We have yet to consider whether there is one correct way to award restitution for cell phones. Given the range of ways in which a cell phone may be purchased, the discounts and perks that manufacturers and cell service providers offer to entice customers, the complicated contracts, and their unique importance in modern life,[5] we cannot say that our current case law makes it obvious and not reasonably beyond dispute that a cell phone's market value is the only way to award restitution for its loss.

Even if the error were obvious and apparent on the record, we would not exercise our discretion to correct it. *State v. Wiltse*, 373 Or 1, 23, 559 P3d 380 (2024). When deciding whether to exercise our discretion to correct plain error, we consider a range of factors, including the competing interests of the parties, the gravity of the error, the ends of justice, whether the trial court was given a chance to correct any error in some manner, and whether "the party alleging the plain error encouraged the error or made a strategic choice not to object to it." *Id*. (internal citations omitted). Here, we would decline to exercise our discretion because defendant's failure to object may have been strategic, any error was not grave, and the ends of justice do not weigh in favor of reversing.

We cannot say that the defendant's failure to object was not strategic. While testifying at the restitution hearing, K noted that her new phone cost $1,600 and expressed annoyance that she might only receive the price of the old phone. Also, during trial, K had testified that the destroyed phone had cost her "around a thousand dollars." K did not testify at the restitution hearing as to whether the contract price of $599.99 was a discount from the "sticker price," and defendant chose not to cross examine her. Given that phone

---

[5] We previously upheld restitution in a case where a victim's phone was stolen for two days, which forced the victim to incur fees with a ride-sharing service that he worked for that he otherwise would not have, even though the phone was not destroyed, on the basis that a phone is a "a pervasive and insistent part of daily life." *See State v. Venable*, 316 Or App 235, 240, 502 P3d 250 (2021).

contracts may include a discounted price (less than the reasonable market value) in exchange for the consumer's commitment to stay with a particular provider, and indications from K that she wanted restitution in an amount greater than $599.99, defendant could have concluded that just compensation for the loss incurred might include paying off the remaining contractual obligation in addition to the cost of a replacement phone.[6] Thus, defendant might have chosen not to object lest he press the issue too far. That defendant had previously objected to the destroyed phone's value during trial[7] also indicated that defendant was aware of the issue but may have chosen not to re-raise it.

Thus, defendant might have concluded that not objecting benefitted him because other potential methods for calculating restitution could result in a higher restitution award. For the same reasons, the error is not particularly grave and the ends of justice do not weigh in favor of reversal.

Because the error is not obvious, the trial court did not plainly err by awarding $599.99 in restitution for the destroyed phone. Even if the error was plain, we would not exercise our discretion to correct the error.

Affirmed.

---

[6] Defendant argues that K's loss was only $419.99 and arrives at that number by assuming it to be her remaining contractual obligation, *i.e.* the price she was required to pay off immediately because of the phone's destruction. But we also do not understand that to be K's loss, because she testified that she had made payments on the phone in the 17 months since she made her $180 downpayment on the phone—though we acknowledge that her testimony is contradictory on this point. Thus, the record was unclear as to what K actually had to pay off at the time of the phone's destruction.

[7] Defendant was convicted on the lesser included charge of second-degree criminal mischief, rather than the originally charged first-degree criminal mischief, as a direct result of questions about the phone's value. First-degree criminal mischief has a $1,000 value threshold, whereas second-degree criminal mischief has only a $500 value threshold. ORS 164.365; ORS 164.354.