Submitted March 16, 2015; remanded for resentencing, otherwise affirmed
December 29, 2016; petition for review denied April 13, 2017 (361 Or 350)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JASON P. HERFURTH,
*Defendant-Appellant.*

Washington County Circuit Court
C110010CR; A153632

388 P3d 1104

Peter Gartlan, Chief Defender, and Morgen E. Daniels, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Susan G. Howe, Assistant Attorney General, filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

**DUNCAN, P. J.**

Defendant, who was convicted of sex crimes against a teenage victim, MD, appeals, asserting, among other claims, that the trial court erred by ordering him to pay restitution for attorney fees incurred by MD's family and for the costs of a sexual abuse evaluation of MD. We conclude that the trial court did not err in ordering defendant to pay restitution for the attorney fees, but did err in ordering him to pay for the costs of the evaluation. Accordingly, we remand for resentencing and otherwise affirm.[1]

We begin with the relevant facts. The state charged defendant with multiple sex crimes. The charges were based on defendant's sexual relationship with MD, which began when MD was 15 years old and lasted for more than one year.

After MD disclosed the relationship to her family and law enforcement, MD's family retained a lawyer to advise them throughout the course of the criminal prosecution. MD also underwent an evaluation at CARES, a child abuse assessment center. The evaluation included an interview that was observed by a police detective, who later searched defendant's house for items MD mentioned during the interview.

The state tried the case to a jury, which found defendant guilty of one count of rape in the third degree, ORS 163.355, and nine counts of sexual abuse in the second degree, ORS 163.425.

After trial, the state requested restitution, including $5,162.50 to be paid to MD's father for attorney fees and $165.57 to be paid to the Criminal Injuries Compensation Account (the Account) to reimburse it for its payment of a portion of the cost of the CARES evaluation.[2] At a hearing

---

[1] In addition to challenging the restitution, defendant challenges the trial court's response to his objection to the prosecutor's closing argument and the criminal history score it used when imposing consecutive sentences on several counts. We reject those challenges without written discussion.

[2] The state requested a total of $18,434.24 in restitution. On appeal, defendant challenges only the restitution requested for the attorney fees and the CARES evaluation.

on the restitution request, the state presented testimony from MD's father and MD's family's attorney. MD's father testified that the attorney helped the family inform MD's friends and their families, who also knew defendant, about defendant's abuse. The attorney explained that those efforts were intended to ensure that MD's family would not be liable for failing to disclose information. MD's father and the attorney also testified that the attorney guided and supported the family throughout the criminal case. Specifically, the attorney helped prepare family members to testify at the trial and accompanied them to closing arguments and sentencing.

Defendant objected to the request for the attorney fees, asserting that restitution is for economic damages and attorney fees are not economic damages. Defendant also objected to the request for restitution for the CARES evaluation, asserting that CARES functions "in a forensic capacity rather than in a treatment capacity," and a court cannot impose restitution to reimburse CARES "for forensic work as part of an investigation." The trial court rejected defendant's arguments and ordered defendant to pay the full amount of the requested restitution.

Defendant appeals, assigning error to the imposition of restitution for the attorney fees and the CARES evaluation. Whether a trial court complied with the requirements for imposing restitution is a question of law, which we review for errors of law. *State v. Morgan*, 274 Or App 161, 164, 359 P3d 1242 (2015).

"Restitution" means "payment of economic damages to a victim." ORS 137.103(3).[3] A trial court is required to order a defendant to pay restitution to a victim in the full amount of the victim's economic damages, unless the victim

---

The request for restitution from the Crime Victims' Services Division, which administers the Account, states that the "Amount Billed" for the "Medical Assessment," which the parties agree was the CARES evaluation, was $2,019.00 and that the "Insurance or Fee Schedule" was $1,853.43, and the "Amount Paid by CVSD [Crime Victims' Services Division]" was $165.57.

[3] ORS 137.103 has been amended since the restitution hearing; however, because those amendments do not affect our analysis, we refer to the current version of the statute in this opinion.

consents to a lesser amount. ORS 137.106(1).[4] For the purposes of the restitution statutes, the term "victim" includes:

"(a) The person or decedent against whom the defendant committed the criminal offense, if the court determines that the person or decedent has suffered or did suffer economic damages as a result of the offense.

"(b) Any person not described in paragraph (a) of this subsection whom the court determines has suffered economic damages as a result of the defendant's criminal activities.

"(c) The Criminal Injuries Compensation Account, if it has expended moneys on behalf of a victim described in paragraph (a) of this subsection.

"(d) An insurance carrier, if it has expended moneys on behalf of a victim described in paragraph (a) of this section."

The term "economic damages" "[h]as the meaning given that term in ORS 31.710, except that 'economic damages' does not include future impairment of earning capacity[.]" ORS 137.103(2). In turn, ORS 31.710(2)(a) provides:

"'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and

---

[4] ORS 137.106 provides, in part:

"(1)(a) When a person is convicted of a crime * * *, that has resulted in economic damages, the district attorney shall investigate and present to the court * * * evidence of the nature and amount of the damages. * * * If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall enter a judgment or supplemental judgment requiring that the defendant pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court.

"(b) Notwithstanding paragraph (a) of this subsection, a court may order that the defendant pay the victim restitution in a specific amount that is less than the full amount of the victim's economic damages only if:

"(A) The victim or, if the victim is an estate, successor in interest, trust or other entity, an authorized representative of the victim consents to the lesser amount, if the conviction is not for a person felony; or

"(B) The victim or, if the victim is an estate, successor in interest, trust or other entity, an authorized representative of the victim consents in writing to the lesser amount, if the conviction is for a person felony."

ORS 137.106 has been amended since the restitution hearing; however, because those amendments do not affect our analysis, we refer to the current version of the statute in this opinion.

rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."

To summarize, the restitution statutes establish that (1) a trial court is required to order a defendant to pay a victim restitution for the full amount of the victim's economic damages, unless the victim consents to a lesser amount; (2) the term "victim" includes persons who have suffered economic damages as a result of a defendant's criminal activities, as well as the Account, if it has expended monies on behalf of the person against whom the defendant committed the criminal offense, if that person has suffered economic damages; and (3) "economic damages" are "objectively verifiable monetary losses."

In addition, as the Supreme Court recently explained in *State v. Ramos*, 358 Or 581, 590, 368 P3d 446 (2016), for the purposes of the restitution statutes, "economic damages" are objectively verifiable out-of-pocket losses that a person could recover against the defendant in a civil action arising out of the defendant's criminal activities.[5]

---

[5] In *Ramos*, the Supreme Court examined the legislative history of the restitution statutes, which previously referred to "pecuniary damages," instead of "economic damages," and which defined "pecuniary damages" as "all special damages, but not general damages, which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities." ORS 137.106(1) (2003), *amended by* Or Laws 2005, ch 564, § 2; Or Laws 2007, ch 425, § 1; Or Laws 2007, ch 482, § 1; Or Laws 2013, ch 388, § 1; Or Laws 2015, ch 9, § 2; ORS 137.103(2) (1987), *amended by* Or Laws 2005, ch 564, § 1; Or Laws 2005, ch 642, § 4; Or Laws 2007, ch 811, § 5; Or Laws 2015, ch 9, § 1. The *Ramos* court explained that the legislature replaced the term "pecuniary damages" with "economic damages" in the restitution statutes "to modernize the labels used to describe the types of damages recoverable as restitution," and the legislature did not intend to change "the historical practice of permitting recovery of only what had been known as 'special' damages, and 'which a person could recover against the defendant in a civil action.'" 358 Or at 590. In other words, the change was intended "to clarify the types of damages that are recoverable as restitution, but not to differentiate between the 'economic damages' that a victim could recover as damages in a civil action and those the victim could recover as restitution." *Id.* at 592.

In this case, defendant challenges the award of restitution to MD's father for the attorney fees. Defendant does not dispute that MD's father incurred the attorney fees as a result of defendant's criminal activity, but he does dispute that the attorney fees are "economic damages." Defendant argues that the attorney fees are not economic damages because "attorney fees are not damages when sought in the same action in which the services are rendered." Defendant's argument is based on "the American Rule," under which "'[e]ach litigant pays his own attorney fees, win or lose, unless a statute or contract provides otherwise.'" *Ramos*, 358 Or at 600 (quoting *Baker Botts L.L.P. v. ASARCO LLC*, 573 US ___, 135 S Ct 2158, 2164, 192 L Ed 2d 208 (2015)). As we understand it, defendant's argument is that, because, for the purposes of the restitution statutes, "economic damages" are those that could be recovered against the defendant in a civil action, and, under the American Rule, "economic damages" do not include attorney fees incurred in the action itself, MD's "economic damages" in this criminal case do not include the attorney fees her family incurred in the criminal case.

The Supreme Court rejected that argument in *Ramos*, which was decided after the parties filed their briefs in this case. In *Ramos*, the court held that, even assuming that the American Rule applies by analogy to restitution hearings, "that rule would not preclude a victim from recovering attorney fees and costs that the victim incurred as a result of the victim's involvement in the underlying criminal prosecution." 358 Or at 602. The court explained that, in a tort action against a defendant for damages, the American Rule does not preclude a plaintiff from recovering fees and costs incurred in a separate proceeding and, therefore, the rule does not preclude a plaintiff, who brings a tort action against a defendant for criminal activities, from recovering attorney fees incurred in connection with the separate criminal prosecution of the defendant. *Id.* at 601-02. The court further explained that "[a] victim in a restitution proceeding is not required to bring a separate tort action to obtain an award of damages, and therefore the prosecution of the defendant and the award of damages occur in the same criminal proceeding[,]" and

> "the combined procedure does not deprive the state from seeking, on behalf of the victim, the same damages that the victim could have obtained if the victim had filed a separate action, and that those damages may include attorney fees and litigation costs that the victim incurred in the underlying criminal prosecution."

*Id.* at 602-03. *See also State v. Kirschner*, 358 Or 605, 610, 368 P3d 21 (2016) (the American Rule did not preclude the trial court from awarding restitution for wages the victim lost in order to testify at defendant's restitution hearing in response to the state's subpoena); *State v. Mahoney*, 115 Or App 440, 443, 838 P2d 1100 (1992), *adh'd to as modified on recons*, 118 Or App 1, 846 P2d 413, *rev den*, 316 Or 142 (1993) (the trial court did not err in ordering the defendant, who was convicted of sexual abuse in the second degree, to pay restitution to the victim, who he supervised at work, for attorney fees she incurred in seeking "legal advice to help her deal with defendant and her employer and to work toward an indictment and criminal prosecution"). Thus, defendant's argument that the victim's family's attorney fees are not economic damages for the purposes of the restitution statutes is unavailing.[6]

We note, as the Supreme Court did in *Ramos*, that not all attorney fees that a victim incurs in connection with a criminal proceeding are recoverable as restitution. In order to be recoverable as restitution, economic damages must result from the defendant's criminal activities. ORS 137.106(1)(a) (providing for restitution when a defendant

---

[6] Defendant bases his argument on *State v. O'Brien*, 96 Or App 498, 774 P2d 1109, *rev den*, 308 Or 466 (1989), but that case is distinguishable. In *O'Brien*, the defendant was prosecuted for theft of services, ORS 164.125, and conspiracy to commit theft of services, ORS 164.450; ORS 164.125, for failing to pay a third party pursuant to a contract. Prior to the criminal case, the third party brought a successful civil action against the defendant for breach of contract. In the criminal case, the trial court convicted the defendant and ordered him to pay restitution for attorney fees that the third party had incurred in pursuing its civil action against defendant. On appeal, we held that those fees would not have been considered damages in the civil action and, therefore, they were not recoverable as restitution in the criminal case. *Id.* at 505.

This case is unlike *O'Brien* because the victim's father did not incur the attorney fees in pursuing a civil action; instead, he incurred them in the criminal case. Consequently, the American Rule would not preclude awarding the fees as economic damages if, on behalf of the victim, he brought a civil action against the defendant.

has been convicted of a crime "that has resulted in economic damages"). In addition, they must be reasonably foreseeable. *Ramos*, 358 Or at 603 (to be economic damages, attorney fees must be "a reasonably foreseeable result of the defendant's criminal activities"). And, they must be reasonable in amount and necessarily incurred. ORS 31.710(2). In this case, defendant does not argue that the attorney fees were not a reasonably foreseeable result of his criminal activities, nor does he argue that they were unreasonable or unnecessary.[7] Consequently, we do not address those matters.

Regarding the restitution for the CARES costs paid by the Account, defendant asserts that the costs are not recoverable as restitution because they are "costs routinely associated with prosecuting crimes" and they do not "fall into any of the categories defined by statute as 'economic damages.'" In response, the state acknowledges that the CARES evaluation was conducted as part of the criminal investigation of defendant, but asserts that it "was also conducted to medically diagnose the victim and recommend additional medical care." Therefore, the state argues, the costs of the examination "fit[] squarely within the definition of economic damages," because they are "reasonable charges necessarily incurred for medical * * * and other health care services."

As set out above, under ORS 137.103(4)(c), the Account is a "victim" "if it has expended moneys on behalf of a victim" described in ORS 137.103(4)(a), that is, "[t]he person or decedent against whom the defendant committed the criminal offense, if the court determines that the person has suffered or did suffer economic damages as a result of the offense." As also mentioned, economic damages are out-of-pocket losses that could be recovered in a civil action. *Ramos*, 358 Or at 590. The Account can receive restitution for expenditures if the defendant would be liable for the expenditures in a civil action. *State v. Romero-Navarro*, 224 Or App 25, 30, 197 P3d 30 (2008), *rev den*, 348 Or 13 (2010) (the Account was entitled to restitution for burial expenses

---

[7] In the trial court, defendant's attorney argued that the attorney fees were not reasonable or necessary because the attorney duplicated services provided by the district attorney's office. Defendant does not renew that argument on appeal.

it paid, where the victim's family was liable for the expenses and could have brought a civil action against the defendant to recover them); *see also State v. Ceballos,* 235 Or App 208, 215-16, 230 P3d 954, *rev den,* 348 Or 669 (2010) (the victim's brother was entitled to restitution for expenses he "was subjected to" for the victim's burial).

Thus, in this case, in order for the CARES costs paid by the Account to be recoverable as restitution, there must be evidence in the record to support an inference that the costs could be recovered against the defendant in a civil action brought by MD or her family. As we have held, investigative expenses cannot be recovered as restitution when "the record discloses no facts giving rise to a theory of civil liability under which they could be recovered from [the] defendant." *State v. Wilson,* 193 Or App 506, 509, 92 P3d 729 (2004) (labor expenses incurred by the state's Fugitive Apprehension Unit to track and apprehend the defendant were not recoverable as restitution because the expenses were not "recoverable under any theory of civil liability"); *see also State v. Dillon,* 292 Or 172, 182-83, 637 P2d 602 (1981) (payments by the state's Adult and Family Services Division (AFS) for defendant's medical expenses following an altercation with the police were not recoverable as restitution because AFS was required "to make available medical assistance for persons who are 'categorically' or 'medically needy'" and there was "no provision for liability or responsibility of the assistance recipient for repayment").

The record in this case regarding the CARES costs is sparse. It does not contain a bill from CARES, and the bills that it does contain do not reflect any charges or payments that correspond to the Account's request for restitution for the CARES costs.[8] The bills do not indicate that MD (or her family, because she was a minor) was charged for the CARES evaluation. And, there is no other evidence in the record that MD or her family was or responsible for payment of the CARES evaluation, which, as the state acknowledged, was conducted as part of its criminal investigation.

---

[8] As noted, the Account's restitution request states that the "Amount Billed" for the CARES evaluation was "$2,019.00," the "Insurance or Fee Schedule" was "$1,853.43" and the "Amount Paid by CVSD" was "$165.57." The bills in the record do not reflect charges or payments in those amounts.

For example, the record does not contain any evidence of any payment agreements or actual payments by MD or her family relating to the CARES evaluation that would support a nonspeculative inference that MD or her family had subjected themselves to financial liability for the evaluation. Therefore, the record does not contain legally sufficient evidence to give rise to a theory of civil liability under which the CARES costs could be recovered from defendant. Consequently, the trial court erred in awarding the Account restitution for the CARES costs.

Remanded for resentencing; otherwise affirmed.