JAMES, J.
*446 The primary issue in this case is whether Child Abuse Response and Evaluation Services (CARES) Northwest-a group formed by Kaiser Permanente, OHSU Doernbecher Children's Hospital, Providence Children's Health, and Randall Children's Hospital at Legacy Emanuel that pairs physicians and nurse practitioners with forensic child interviewers to provide child abuse evaluations in law enforcement investigations-was a victim for purposes of criminal restitution under ORS 137.103(4)(b), which defines "victim" as someone who "has suffered economic damages as a result of the defendant's criminal activities." Based on this record, we hold that CARES, as a provider of services in this case did not suffer economic damages by providing those services, and accordingly reverse the trial court's award of $1,343.85 in restitution to CARES on Count 1. On the remaining assignments of error, each of which challenges the award of restitution to insurance providers, we affirm.
The facts underlying this appeal are undisputed. Defendant pleaded guilty to two counts of first-degree sodomy; two counts of first-degree unlawful sexual penetration; and one count of first-degree sexual abuse, against three foster children who were in the care of defendant's grandparents. Defendant, at the time of the crimes, was between 15 and 18 years old. At some point, there was a disclosure by the children that resulted in a Department of Human Services (DHS) employee, Van Rees, referring the three children to CARES. The three children received medical evaluations at a CARES facility. Van Rees, who was at the time working as the "out of home care assessor," testified that DHS "typically will refer kids to CARES when we have * * * concerns of abuse or neglect." Van Rees testified that a referral to CARES under those circumstances was indicative of one of the "broader purposes" for DHS's use of CARES, as opposed to a referral to CARES being made only when DHS has a belief that there could be prosecution or police involvement. Another caseworker for two of the victims, Coomes, testified that CARES helps to "clarify what happened if something happened, a lot of times there's questions when an allegation is made, * * * they conduct interviews, they do the physical *447 exam, and they make recommendations as to whether those allegations are true or not. And then help [DHS] kind of drive where the case goes from there." Coomes then clarified that by "case" she meant that a criminal case is part of what she was referencing but also case management in terms of how to "help the children and the family cope after what's happened."
The Medical Director of CARES averred that "CARES is a specialized child abuse medical clinic ***." As he testified, when a child is seen for a medical evaluation, the standard of care consists of a medical exam of the child's body, and a recorded forensic interview. The exam and the forensic interview are provided to children at CARES
"without regard for ability to pay. When a child patient is insured, CARES will bill the insurer for the cost of the medical evaluation. While some insurers will cover the full cost of a medical evaluation, others will cover less than the full cost. When an insurer covers less than the full cost, CARES suffers an economic loss."
CARES does not bill or request payment from the child patient's family if insurance will not cover the total costs. The Medical Director of CARES also averred that he *571 believes that "the medical evaluation [of the child victims] resulted, in whole or in part, from the criminal activity of this defendant."
At the close of the restitution hearing, defendant argued that CARES was not a "victim" that was eligible to receive restitution. The state argued that CARES was a "victim" under ORS 137.103(4)(a) or ORS 137.103(4)(b). The trial court ordered $1,343.85 in restitution to CARES on Count 1.[1] Implicit in that order was the conclusion that CARES was a "victim." The trial court then explained its application of our decision in *448 State v. Herfurth , 283 Or. App. 149, 388 P.3d 1104 (2016), rev. den. , 361 Or. 350, 393 P.3d 1176 (2017), to defendant's case:
"So in terms of the evidence in this case, I'm drawing some inferences. I read the affidavit from the CARES Northwest Director, and what he says is that CARES doesn't bill the families, and that they provide the services without regard to the ability of the family to pay, unless they have an insurer, and if they have insurance then they do bill the insurer. And I think that that record, along with the documents that have been submitted established sufficiently for me to draw the inference that under civil law *** that's sufficient for these costs to have been incurred under the civil statute that's referenced in the restitution statute.
"* * * * *
"The fact that CARES only bills people who have insurance and doesn't seek recovery from the patient, in this case the victim, and the fact that there are no agreements between the person who comes to CARES for reimbursement, someone could argue, eliminates that link that the State normally has to prove. That is, some responsibility on the part of the victim for the bill. But the reason why I don't come to that conclusion is because in this case, they did bill the insurance company, and I think that's sufficient for purposes of that analysis."
At trial, the arguments of the parties and the focus of the trial court was on whether CARES met the definition of ORS 137.103(4)(b). The state had sought restitution for CARES as a victim because it "takes a financial loss from the difference between the actual cost of treatment and the amount reimbursed through insurance," which "qualifies as economic damages." In defendant's briefing on appeal, that core question remained the same, but the arguments shifted to whether CARES provided medical or criminal investigatory services. However, at oral argument, this court brought the parties' focus back on the issue of where in the statutory scheme CARES would fit. The arguments thus framed, we turn to our analysis.
"Whether a trial court complied with the requirements for imposing restitution is a question of law, which we review for errors of law." Herfurth , 283 Or. App. at 152, 388 P.3d 1104. The *449 applicable statutory definition of "victim" is found in ORS 137.103 :
"(4) 'Victim' means:
"(a) The person or decedent against whom the defendant committed the criminal offense, if the court determines that the person or decedent has suffered or did suffer economic damages as a result of the offense.
"(b) Any person not described in paragraph (a) of this subsection whom the court determines has suffered economic damages as a result of the defendant's criminal activities.
"(c) The Criminal Injuries Compensation Account, if it has expended moneys on behalf of a victim described in paragraph (a) of this subsection.
*572 "(d) An insurance carrier, if it has expended moneys on behalf of a victim described in paragraph (a) of this subsection.
"(e) Upon the death of a victim described in paragraph (a) or (b) of this subsection, the estate of the victim.
"(f) The estate, successor in interest, trust, trustee, successor trustee or beneficiary of a trust against which the defendant committed the criminal offense, if the court determines that the estate, successor in interest, trust, trustee, successor trustee or beneficiary of a trust suffered economic damages as a result of the offense."
An explanation of economic damages is also included in ORS 137.103 :
"(2) 'Economic damages':
"(a) Has the meaning given that term in ORS 31.710, except that 'economic damages' does not include future impairment of earning capacity[.]"
"Economic damages" is defined in ORS 31.710 :
"(2) As used in this section:
"(a) 'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, *450 burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."
Finally, as explained in State v. Ramos , 358 Or. 581, 368 P.3d 446 (2016), restitution is "a process to allow a victim to ask the criminal court to award the damages that the victim would be able to obtain in a civil action." Id. at 590, 368 P.3d 446.
We now apply those principles to this case. First, CARES does not meet the definition of victim under ORS 137.103(4)(a) because CARES is not the "person or decedent against whom the defendant committed the criminal offense." Similarly, CARES does not meet the definition of victim under ORS 137.103(4)(c)-(f) in that it is not the "Criminal Injuries Compensation Account," an "insurance carrier," an "estate of the victim," nor finally, "[t]he estate, successor in interest, trust, trustee, successor trustee or beneficiary of a trust against which the defendant committed the criminal offense." Therefore, if CARES were to qualify as a victim under the restitution statute it could only be under ORS 137.103(4)(b) if it can be said to have "suffered economic damages as a result of the defendant's criminal activities." Synthesizing the principles articulated in the statutory scheme and Ramos , restitution to CARES would be appropriate under paragraph (b) of the statute only if a theory of civil recovery would permit a provider of medical services to recover not from the patient and recipient of those services but from the third-party tortfeasor who caused the patient to seek the services.
Here, the state has never articulated a cognizable theory in which CARES itself-as opposed to the child victims-could be said to have suffered "economic damages" recoverable from defendant. Both below and on appeal, the state's arguments have assumed that a medical services provider incurs "economic damages" from "the difference *451 between the actual cost of treatment and the amount reimbursed through insurance." Operating from that assumption, the state's focus has been on the significance of the fact that CARES provided a service to the actual crime victim. But, paragraph (b) of the statute requires the state to articulate a theory by which defendant would have civil liability directly to CARES itself. See Ramos , 358 Or. at 596, 368 P.3d 446 ("The legislature adopted the definition of 'economic damages' that applies in civil actions and described the required causal connection between a defendant's criminal activities and a victim's damages in terms that are used in civil actions. We can presume that the legislature was cognizant of the limitation that the civil law imposes on the recovery of such damages.").
The state asserts that there exists a theory of civil recovery under *573 White v. Jubitz Corp ., 347 Or. 212, 219 P.3d 566 (2009). The state misconstrues Jubitz . There, the Oregon Supreme Court held that an injured plaintiff could recover the entirety of a medical bill from the tortfeasor as "economic damages" even if "a third party satisfies medical charges" and the plaintiff has no obligation to repay the third party. Id . at 234, 219 P.3d 566. Jubitz does not supply a theory by which an injured party's doctors or other third party would have suffered "economic damages." Rather, Jubitz was concerned with the source of satisfaction of an obligation owed to the injured party, not whether it existed originally or whether third parties themselves could recover from the tortfeasor.
By analogy, a doctor ordinarily has not suffered "economic damages" recoverable against a third-party tortfeasor by providing medical services to someone injured by the tort, nor has a mechanic ordinarily suffered economic damages recoverable against the person who caused an auto accident by repairing the car of someone hit in the auto accident. See generally Hale v. Groce , 304 Or. 281, 283-84, 744 P.2d 1289 (1987) ("[W]ithout a duty to plaintiff derived from defendant's contractual undertaking, plaintiff's tort claim would confront the rule that one ordinarily is not liable for negligently causing a stranger's purely economic loss without injuring his person or property."). Rather, it is the patient of the doctor, or the customer of the mechanic, who has suffered "economic damages" by virtue of incurring a *452 legally enforceable obligation to compensate for those services.[2] Under these circumstances, where the state sought restitution for CARES but provided no explanation for why its provision of services constitutes "economic damages" within the meaning of the restitution statutes, we reverse that award.[3]
Accordingly, the award of $1,343.85 in restitution to CARES on Count 1 was error.
Supplemental judgment awarding restitution to CARES on Count 1 reversed; otherwise affirmed.

The trial court also ordered defendant pay $717.32 in restitution to Family Care c/o Subrogation Services, Inc., on Count 1; $3,083.00 in restitution to Providence Health Plan on Count 31; and $2,621.00 in restitution to Providence Health Plan on Count 53. Based on the arguments raised by the parties in this appeal, we affirm those restitution awards without discussion.
Defendant also agreed to pay $352.55 in restitution for miscellaneous medical treatment. Defendant does not challenge the $352.55 amount on appeal.

See State v. Daniel , 109 Or. App. 680, 681, 820 P.2d 901 (1991), wherein "[t]he [trial] court ordered defendant to pay $355.70 as restitution to Holy Rosary Medical Center for its expenses in examining the woman after her sexual contact with defendant." The defendant argued and the state conceded that the medical center could not recover restitution. We accepted the state's concession and reversed the grant of restitution to the hospital.

Rather than articulate a theory of "economic damages," the state simply asserts that "defendant does not dispute that CARES suffered losses that were the direct and foreseeable result of defendant's sexual abuse of the three minor victims." That assertion sweeps too broadly; defendant argues that CARES "has not suffered economic damages, is not a victim, and is not entitled to restitution." We need not decide, in this case, whether there is any circumstance in which CARES itself could be said to be a "victim" under the restitution statutes. It suffices to say that the state has not advanced any cognizable legal theory in this case under ORS 137.103(4)(b).