Argued and submitted September 17, 2019; decision of Court of Appeals reversed in part, judgment of circuit court reversed in part, and case remanded to circuit court for further proceedings January 16, 2020

STATE OF OREGON,
*Respondent on Review,*

*v.*

JOSHUA BRANDON ANDREWS,
*Petitioner on Review.*

(CC 15CR1533) (CA A162029) (SC S066479)

456 P3d 261

Defendant, who was convicted of harassment under ORS 166.065, objected to the state's request for restitution in the amount of the victim's economic damages. Defendant argued that the jury could have found defendant guilty of harassment without finding that he committed the criminal act upon which the claim of restitution was based. When the trial court awarded the requested restitution, defendant appealed, and the Court of Appeals affirmed. *Held*: Under the criminal restitution statute, ORS 137.106, a trial court may not award restitution unless it can determine, from the record and the defendant's conviction, that the jury necessarily found that the defendant committed the criminal act upon which the claim of restitution is based.

The decision of the Court of Appeals is reversed in part. The judgment of the circuit court is reversed in part, and the case is remanded to the circuit court for further proceedings.

On review from the Court of Appeals.*

Erin J. Snyder Severe, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

E. Nani Apo, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Walters, Chief Justice, and Balmer, Nakamoto, Flynn, Duncan, and Nelson, Justices, and Landau, Senior Justice pro tempore.**

_____

* On appeal from Malheur County Circuit Court, Patricia A. Sullivan, Judge. 295 Or App 194, 433 P3d 757 (2018).

** Garrett, J., did not participate in the consideration or decision of this case.

WALTERS, C. J.

The decision of the Court of Appeals is reversed in part. The judgment of the circuit court is reversed in part, and the case is remanded to the circuit court for further proceedings.

## WALTERS, C. J.

In this criminal case, defendant was convicted of one count of harassment, and, during sentencing, the trial court awarded restitution under ORS 137.106. The question we address is whether the trial court had statutory authority to do so.[1]

The relevant facts are uncontested. The state charged defendant with two crimes—one count of fourth-degree assault, and one count of harassment. To prove assault, the state was required to prove that defendant caused the victim "physical injury." ORS 163.160(1)(a). To prove harassment, the state was required to prove that defendant subjected the victim to "offensive physical contact." ORS 166.065(1)(a)(A). At trial, the state presented evidence that defendant drove to the victim's place of work, began yelling at him, spat on him, and punched him in the face, knocking out his tooth bridge. The jury acquitted defendant on the assault charge but convicted him of harassment. Post-trial, the state asked the court to impose restitution for the cost of replacing the victim's tooth bridge. Defendant objected, arguing that the trial court did not have statutory authority to do so. Defendant contended that restitution is permitted only when a trial court can conclude, from the defendant's conviction, that the defendant engaged in the criminal act that forms the basis for the award of restitution, and that, in this case, the trial court could not reach that conclusion: The act that formed the basis for the victim's damages was the punch, and the jury could have convicted defendant of harassment without finding that defendant had punched the victim. To support his argument, defendant noted that the jury had acquitted defendant of assault, which could indicate that the jury did not believe that defendant had punched the victim and had reached its verdict based on the spitting evidence alone. The trial court

---

[1] Defendant makes a constitutional argument that we do not address. Defendant argues that even if the trial court had statutory authority to award restitution, its award violated his Article I, section 11, right to a jury trial. Because we resolve the case on statutory grounds, we do not address defendant's constitutional argument. *See Vasquez v. Double Press Mfg., Inc.*, 364 Or 609, 614, 437 P3d 1107 (2019) (court will avoid reaching constitutional questions unless necessary).

reasoned differently and noted that, in acquitting defendant on the assault charge, the jury had not necessarily found that defendant had not punched the victim; the jury could have determined that the victim had not suffered "physical injury," as required by ORS 163.160(1)(a). The trial court observed that the evidence that defendant had punched the victim was strong and that, while urging the jury to find defendant guilty of harassment, the state had argued that both the punch and the spitting could support a guilty verdict. The trial court awarded the requested restitution.

Defendant appealed, and the Court of Appeals affirmed. *State v. Andrews*, 295 Or App 194, 433 P3d 757 (2018). The Court of Appeals noted that, in imposing restitution, a trial court "may not engage in fact-finding that enlarges the scope of a defendant's criminal activities beyond what the defendant was convicted of or admitted to," and cited *State v. Dorsey*, 259 Or App 441, 442, 314 P3d 331 (2013), as an example of that limitation. *Andrews*, 295 Or App at 198. In *Dorsey*, the Court of Appeals held that a defendant who had pleaded guilty to stealing money over the course of approximately two weeks could not be required to pay restitution for money that was reported missing over 85 days. 259 Or App at 442. In *Andrews*, however, the Court of Appeals concluded that the restitution award did not depend on criminal activities that fell outside the scope of the crime for which defendant had been convicted. *Id.* at 198. The court explained that the "scope of defendant's criminal activity * * * was determined when the jury convicted him of engaging in 'offensive physical contact,' based on evidence that included his spitting at and punching the victim" and reasoned that "[t]he trial court did not expand on that scope in imposing restitution." *Id.* Rather, the trial court had considered evidence that it normally could consider at a sentencing hearing and "made findings regarding the victim's damages and their causal relationship to the evidence of defendant's conduct that was in the record."[2]

---

[2] The court noted that the result would be different if the jury's verdict was logically inconsistent with the determination that defendant punched the victim. *State v. Andrews*, 295 Or App 194, 198 n 2, 433 P3d 757 (2018). In this case, it was not. The fact that defendant was acquitted on the assault charge did not necessarily mean that the jury had determined that no punch occurred. *Id.* The jury

*Id*. at 197-98. We allowed defendant's petition for review,[3] and, because we conclude that the trial court could not award restitution under ORS 137.106, we reverse.

ORS 137.106 requires an award of restitution when three prerequisites are met: (1) criminal activities;[4] (2) economic damages; and (3) a causal relationship between the two. *State v. Dillon*, 292 Or 172, 181, 637 P2d 602 (1981); *see also State v. Ramos*, 358 Or 582, 588, 368 P3d 446 (2016) ("The statute requires *** that the damages be 'objectively verifiable monetary losses' that 'result from' a defendant's criminal activity."). In this case, the parties' dispute focuses on the first of those prerequisites—the defendant's criminal activities. Specifically, the parties disagree about how a trial court is to determine, from a defendant's conviction, whether the defendant committed the criminal act on which the state relies for an award of restitution. Defendant argues that, to find that a defendant committed a criminal act, a trial court must be able to conclude that the jury necessarily found that the defendant committed that act. The state argues that the trial court is permitted to conclude that a defendant committed a criminal act when there is evidence of that act in the record and that evidence is sufficient to support the jury's guilty verdict; in other words, a defendant's conviction determines the "scope" of a defendant's criminal activity, and the trial court is permitted to find that the defendant committed any act within that scope.

---

could have determined that defendant's punch broke the victim's tooth bridge but that the victim did not suffer "physical injury." *See* ORS 163.160 (defining fourth-degree assault to require evidence of "physical injury").

[3] We note that defendant made an additional assignment of error in the Court of Appeals: that the trial court had failed to give a required jury instruction. Defendant admitted that the issue was not preserved, and the Court of Appeals affirmed without discussion. *State v. Andrews*, 295 Or App 194, 195, 433 P3d 757 (2018). This court denied review of that issue, and accordingly, we do not disturb the Court of Appeals' decision on that matter.

[4] In 1999, the Oregon legislature amended ORS 137.106 by substituting for the phrase, "[w]hen a person is convicted of criminal activities," the current phrase, "[w]hen a person is convicted of a crime, or a violation." Neither party contends that that change affects the analysis in this case, and both parties agree that our previous cases interpreting the restitution statute are still good law. Moreover, for purposes of this case, both parties agree that the question is what the proper analysis should be when a trial court is determining whether a defendant's conviction for a crime has resulted in economic damages. As we will explain, our previous cases inform our analysis, but do not decide that issue.

Before we address that narrow dispute, we think it helpful to set out the role that the trial court plays in determining whether the other two prerequisites to restitution, which are not at issue in this case, are met. Those two prerequisites are a victim's economic damages and the causal link between those damages and the criminal act that the defendant committed. As relevant here, the restitution statute provides:

> "When a person is convicted of a crime, or a violation as described in ORS 153.008, that has resulted in economic damages, the district attorney shall investigate and present to the court \*\*\* evidence of the nature and amount of the damages. \*\*\* If the court finds from the evidence presented that a victim suffered economic damages, in addition to any other sanction it may impose, the court shall \*\*\* [require] the defendant [to] pay the victim restitution in a specific amount that equals the full amount of the victim's economic damages as determined by the court."

ORS 137.106(1)(a).

By its terms, the restitution statute grants trial courts authority to make their own, independent, factual findings as to a victim's economic damages. When a person is convicted of a crime that has resulted in economic damages, ORS 137.106(1)(a) requires the district attorney to investigate and present to the court evidence of "the nature and amount of the damages." ORS 137.106(5) provides for a hearing if the defendant requests one, and ORS 137.106(1) sets forth the procedure for those hearings. *See also State v. Hart*, 299 Or 128, 130, 699 P2d 1113 (1985) (ORS 137.106 "sets forth the procedure for [restitution] hearings"). If the trial court "finds" from the evidence of the nature and amount of the damages that the "victim suffered economic damages," then the trial court must order the defendant to pay restitution in the full amount of the victim's damages. ORS 137.106(1).

The restitution statute also grants trial courts authority to engage in independent fact-finding to determine the cause of the victim's economic damages; that is, the causal relationship between a defendant's criminal activities and the economic damages suffered by the victim. As we noted in *Ramos*, "ORS 137.106 requires that

economic damages 'result from' a defendant's crime." 358 Or at 593 (quoting the restitution statute). When determining causation, a trial court must determine whether there is a "but-for" connection between the victim's damages and the crime and whether the victim's economic damages were a reasonably foreseeable result of the defendant's crime. *Id.* at 596. Those questions, like the question of the amount of economic damages, pose "a factual question for the court." *Id.* at 597.[5]

But, as the parties recognize, the restitution statute does not grant trial courts similar authority to make its own independent factual findings about the first prerequisite to an award of restitution—the criminal act that the defendant committed. ORS 137.106(1)(a) permits an award of restitution when a defendant is "convicted of a crime" that permits an award of restitution. In *State v. Lefthandbull*, 306 Or 330, 332-33, 758 P2d 343 (1988), this court concluded that more than a bald conviction is necessary to meet that statutory requirement. In *Lefthandbull,* the defendant had pleaded guilty to an attempt to manufacture a controlled substance but had not admitted committing any specific acts. *Id.* at 332. This court held that the defendant could not be ordered to pay restitution for damages caused by the manufacturing process because the state had not "proved" that the defendant had committed the criminal act on which the restitution claim was based. *Id.* at 333. We explained that, "[b]ecause defendant pleaded guilty to the attempt, *** no particular acts were proved at trial. Nor did [the defendant] admit any specific acts at the plea proceeding or the sentencing hearing." *Id.* Thus, under *Lefthandbull*, a trial court must be able to determine from the record at trial, not only that the defendant was convicted of a crime, but also that the defendant committed a specific criminal act—the act on which the restitution claim is based. Put differently, ORS 137.106 does not grant trial courts authority to make their own factual findings about whether a defendant committed such an act; trial courts must look

---

[5] We have held that Article I, section 11, does not prohibit a trial court from making those factual findings, because whether the victim suffered economic damages and in what amount is not an element of the crime. *State v. Hart*, 299 Or 128, 136-37, 699 P2d 1113 (1985).

to the record and the defendant's conviction to make that determination.

In this case, the criminal act that allegedly resulted in the victim's economic damages was the punch that knocked out the victim's tooth bridge. The parties accept that the trial court was not permitted to make its own factual finding as to whether the punch occurred. They quarrel about what the trial court could determine about the punch from the record at trial and defendant's harassment conviction. Defendant takes the position that the record and conviction do not prove that he punched the victim; the jury could have convicted defendant of harassment based on the spitting alone. The state takes the position that, because there was evidence in the record that defendant had delivered the punch, and the state had urged the jury to consider that evidence when it reached its verdict on the harassment charge, the record and conviction are sufficient to establish that defendant punched the victim.

As we understand the state's argument, it is that, because there was evidence at trial from which the jury could have found that defendant punched the victim, the sentencing court was permitted to conclude that defendant had been convicted of doing so. That argument is, however, at odds with this court's decision in *State v. Dulfu*, 363 Or 647, 426 P3d 641 (2018). In *Dulfu*, one of the state's arguments about the validity of the defendant's sentence turned on the basis for the defendant's conviction. *Id.* at 651. The state had alleged alternative bases for its charges of first-degree encouraging child sexual abuse (ECSA I)—the state alleged that the defendant had possessed files containing visual recordings of sexually explicit conduct involving children and that the defendant had duplicated those files. *Id.* The jury convicted the defendant of ECSA I but was not asked to specify the basis for its verdict. *Id.* At sentencing, the trial court "[made] its own finding" that the defendant's crime was based on the defendant's duplication of the files. *Id.* at 653. We reversed, explaining that the trial court could not make that finding from the record at trial:

"In sentencing defendant, the trial court could not make its own finding regarding the basis for defendant's guilt;

that finding was within the exclusive province of the jury. Although the state may present alternative theories of a defendant's guilt to a jury, a trial court cannot impose a sentence that is contingent upon the jury having made a particular finding regarding the defendant's guilt if the record does not reflect that the jury actually made that finding."

*Id*. at 673 (citations omitted). Thus, in *Dulfu*, we rejected the state's argument that, when a case is tried to a jury and the defendant's sentence depends on the jury having found that the defendant committed a particular criminal act, then the sentencing court may rely on any criminal act that could have been the basis for the jury's verdict. Instead, we concluded that the sentencing court must be able to ascertain from the record that the jury in fact found that the defendant committed that act. *Dulfu*, 363 Or at 673.

We recognize that *Dulfu* was not a case that addressed the restitution statute. And we agree with the state that a sentencing court is not always without authority to make its own factual findings. Indeed, as discussed, the restitution statute grants sentencing courts certain fact-finding authority—authority to determine the amount of a victim's economic damages and the causal link between those damages and the defendant's criminal activities. However, as also discussed, the restitution statute does not grant a sentencing court authority to make its own factual findings as to the criminal act that the defendant committed. When a case is tried to a jury, a sentencing court must determine the factual findings that the jury made and make that determination by considering the record and the defendant's conviction. In that circumstance, *Dulfu* is instructive. When, as in *Dulfu,* there is nothing in the record or the conviction to indicate that the jury found that the defendant committed the particular criminal act that is necessary to the decision of the sentencing court, then the sentencing court cannot conclude that the jury made that finding.

The state's argument also is at odds with this court's decision in *Lefthandbull,* a case decided under the restitution statute. In *Lefthandbull*, this court concluded that the sentencing court did not have authority to award restitution because the court could not determine, from the

defendant's guilty plea, the particular criminal act that the defendant had committed. 306 Or at 333. The state seeks to distinguish *Lefthandbull* by arguing that, in that case, the record did not include any evidence about the defendant's conduct. Here, the state notes, there was evidence from which the jury could have found that defendant punched the victim. But that distinction, although accurate, is not what is important about *Lefthandbull*. What is important about *Lefthandbull* is how this court treated the defendant's conviction. We did not consider whether the particular act for which restitution was sought was within the "scope" of the crime to which defendant had pleaded guilty, or whether the defendant's guilty plea *could have been* based on an act that would have permitted restitution. Instead, we required that the trial court be able to determine that the state had "proved" such an act. A state may present evidence of an act without proving it. When a case is tried to a jury, it is the jury, not the sentencing court, that decides whether a criminal act is proved. *See Dulfu*, 363 Or at 673 ("[A]s in any criminal case tried to a jury, it was the jury's role to determine whether the state carried its burden of proving the *actus reus* and the *mens rea* of each charged crime.").

In addition to attempting to distinguish *Dulfu* and *Lefthandbull*, the state calls our attention to other law that gives a trial court greater latitude in its consideration of a defendant's conviction. The state cites the standard by which a court evaluates a motion for judgment of acquittal and argues that, when there is sufficient evidence from which a jury could find that a defendant committed the charged crime, and the jury is not required to concur on the particular acts that provide the basis for its verdict, then no more is required for the jury to reach its verdict. Similarly, the state asserts, no more should be required for a court to award restitution. The state adds that it is not required to separately allege and obtain separate verdicts for all of the various acts that a defendant may have committed and contends that it would be unduly burdensome to require it to do so for the sole purpose of establishing a basis for restitution. The state reminds us that, when acts occur in the same criminal episode, separate guilty verdicts for those acts may merge and, if they do, only one judgment of conviction will be entered.

No purpose would be served by requiring more complex pleading and proof when such complexity is not required to sustain a verdict or enter a judgment of conviction.

The state is correct that, when a reviewing court considers a defendant's motion for judgment of acquittal, it looks to all the evidence presented to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989); *see also State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994) (applying that standard). The state need not establish that the jury actually found any one or more of the facts presented; the state need only establish that the jury could have found the essential elements of the crime. *King*, 307 Or at 339.

The state also is correct that a jury may reach a verdict without concurring on all the facts adduced by the state. Article I, section 11, of the Oregon Constitution requires that at least 10 members of a jury render a guilty verdict, and, as a result, juries are required to concur on all material elements of a crime. *State v. Pipkin*, 354 Or 513, 529, 316 P3d 255 (2013); *see also State v. Ashkins*, 357 Or 642, 649, 357 P3d 490 (2015) ("[A] defendant's right to jury concurrence arises from Article I, section 11."). But the jury is not required to concur on every fact adduced. For example, in *Pipkin*, this court concluded that, to convict a defendant of first-degree burglary, the jury was not required to concur as to whether the defendant had entered the home unlawfully or had remained unlawfully. *Pipkin*, at 529-30.[6]

And, again, the state is correct in its articulation of merger principles. If, in this case, the state had alleged

---

[6] If jury concurrence is required, then the trial court must instruct the jury accordingly. *State v. Ashkins*, 357 Or 642, 643, 357 P3d 490 (2015) (where jury concurrence was required, trial court erred by failing to give concurrence instruction). In this case, the parties disagree about whether a jury concurrence instruction was required and the role that jury concurrence principles should play in this court's analysis of the restitution statute. But, to determine whether the restitution award in this case was permitted, we need not decide whether a jury concurrence instruction was required, and we do not believe that jury concurrence principles inform our analysis of the restitution statute. Even if the jury had been instructed that it must concur on whether defendant was guilty of harassment because he punched the victim or whether he was guilty because he spit on the victim, the trial court would still have been unable to determine which decision the jury had made.

two separate counts of harassment—alleging in one that defendant punched the victim, and in the other that defendant spit on the victim—and if the jury had found defendant guilty of both counts, then the two guilty verdicts may well have merged and resulted in only one conviction. Under ORS 161.067(3), when the state charges a defendant with, and the jury finds a defendant guilty of committing, multiple violations of the same criminal statute based on the same conduct, and the trial court determines that there was not "sufficient pause" between the defendant's violations, the trial court is required to merge the multiple violations into a single conviction.

The problem with the state's argument is not in its articulation of the principles that it cites, but in its failure to demonstrate that the restitution statute incorporates them. As we have explained, ORS 137.106(1)(a) does not permit an award of restitution unless a trial court can determine, from the record and the defendant's conviction, that the defendant committed the act that resulted in the victim's damages. A conviction may establish that a defendant committed a crime without establishing that the defendant committed any particular act. *See Lefthandbull*, 306 Or at 334 (upholding the defendant's conviction for attempt to manufacture a controlled substance, but not award of restitution). In making other legal determinations, it may be enough for a court to determine what a jury *could have found* from the facts adduced. But, under ORS 137.106, that does not suffice. It is not enough that a jury *could have found* that a defendant committed the criminal act that permits restitution. Instead, a trial court must be able to ascertain from a defendant's conviction that the jury *did in fact find* that the defendant committed the act.

We do not consider that interpretation of ORS 137.106 to be unworkable. As this court said in *Dulfu*, "in most cases, the jury's finding regarding the *actus reus* of each crime will be apparent from the charging instrument, jury instructions, and jury verdict form." 363 Or at 673 n 10. And the state controls how a defendant is charged. For example, the state may have the option of alleging alternative facts in separate counts. The state also may be able to clarify the basis for a jury's verdict through jury instructions or

by having the jury indicate the basis for its verdict on the verdict form.

We conclude that, when a criminal case is submitted to a jury and the jury convicts the defendant of a crime, the trial court is not authorized to award restitution under ORS 137.106 unless it can determine from the record and the defendant's conviction that the jury necessarily found that the defendant committed the criminal act that permits restitution. The Court of Appeals is correct in its understanding that, in considering whether a person was "convicted of a crime *** that has resulted in economic damages," under ORS 137.106, the trial court has authority to make its own factual findings as to both economic damages and causation, and, in doing so, may "consider any evidence that it ordinarily would at a sentencing hearing." *Andrews*, 295 Or App at 197 (citation and quotation omitted). But a trial court does not have the same statutory authority when it considers whether the state proved the criminal act on which the claim of restitution is based. The trial court must be able to determine from the record and the defendant's conviction that the jury necessarily found that the defendant committed that act. Here, the trial court could not determine from the record and defendant's conviction for harassment that the jury necessarily found that defendant delivered the punch that resulted in damage to the victim's tooth bridge. The jury could have based its decision on the spitting evidence alone. Therefore, the trial court did not have authority under ORS 137.106 to award restitution for damages that were caused solely by the punch.

The decision of the Court of Appeals is reversed in part. The judgment of the circuit court is reversed in part, and the case is remanded to the circuit court for further proceedings.