786 June 24, 2026 No. 569

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GERARDO JESUS TRUJILLO-TORRES,
*Defendant-Appellant.*

Marion County Circuit Court
22CR38423; A183249

Tracy A. Prall, Judge.

Submitted July 7, 2025.

Daniel J. Casey filed the briefs for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

EGAN, J.

Portion of the second amended judgment imposing restitution reversed and remanded; otherwise affirmed.

**EGAN, J.**

In this criminal case, defendant appeals from a judgment of conviction for second-degree murder with a firearm, ORS 163.115, and attempted first-degree murder with a firearm, ORS 163.107, ORS 161.405. In his sole assignment of error, he argues that the trial court erred in ordering him to pay $407,400.94 in restitution to the surviving victim because the state failed to establish that the victim "incurred" those economic damages. Meanwhile, the state argues that the trial court properly imposed restitution for that amount under *White v. Jubitz Corp.*, 347 Or 212, 219 P3d 566 (2009), in which the Supreme Court held that the plaintiff incurred economic damages for the value of medical costs for which he had agreed to be responsible, even though he was not liable to pay those costs because his medical providers wrote them off. Concluding that the trial court erred in deciding that the surviving victim incurred economic damages equaling $407,400.94, we reverse and remand.

## STANDARD OF REVIEW

We review a restitution order for errors of law and are bound by the trial court's factual findings if there is any evidence in the record to support them. *State v. McClelland*, 278 Or App 138, 141, 372 P3d 614, *rev den*, 360 Or 423 (2016). "[W]e presume that a trial court implicitly resolves factual disputes consistently with its ultimate conclusion where those facts are necessary to its conclusion and supported by the record." *State v. Pool*, 338 Or App 19, 20, 565 P3d 73 (2025) (internal quotation marks omitted). We state the facts consistently with that standard.

## FACTS

Defendant's convictions for second-degree murder and attempted first-degree murder are based on the January 2021 shooting of deceased victim J and surviving victim A. Defendant shot and killed J while he was driving, causing J to crash the vehicle while A was inside. Defendant shot A in the head, and she suffered additional injuries that resulted from the crash. Defendant pleaded guilty to both charges.

At a contested restitution hearing, the state requested restitution in the amount of $407,400.94 on behalf of A for medical services rendered to her. That amount represented medical charges for services provided to treat A's injuries that were not covered by Medicaid and that A's medical providers agreed to write off pursuant to their contracts with Medicaid. The state and A's counsel argued that those costs were recoverable as restitution even though A was not liable to pay them because, under the collateral source rule, a defendant is liable for a plaintiff or victim's medical bills even if they are later discharged by a third party. In response, defendant argued that there was no evidence that A had ever actually been billed for those costs; therefore, defendant was not liable for them under that rule.

A's counsel stated that she had contacted the treating hospital to request "billing records" for A. A's counsel submitted as evidence the billing statement from the medical providers, along with a spreadsheet summarizing the billing records, listing the charges for A's hospital services. The billing statement identified A as the patient and the "member," and identified both the "client" and the "group" as "Performance Health Technology, LTD - PHA Medicaid." The statement showed a charged amount of $543,660.77; a balance due amount of $136,259.83, referred to at the hearing as a "medical treatment lien" or "the lien amount," and, correspondingly, a "paid amount" of $136,259.83. The difference between the charged amount and the paid amount is the amount in dispute: $407,400.94.

In reference to the exhibits, A's counsel stated, "I do want to say that these are not bills"; rather, "[t]hese were obtained by me at my request from the providers," and "I requested their billings and this is what I got." She argued that the "billings * * * were substantially more than what was ultimately paid under their contract with the Medicaid program and that's the difference—the difference between the billings which are presumed reasonable under the restitution statute; so we start with that presumption." After referencing *White*'s holding that a plaintiff who becomes "liable or subject to" reasonable charges thereby incurs them, counsel stated that, "by the very nature that [A] is

*potentially subject to* reasonable charges or liable for reasonable charges[,] she has incurred [the $407,400.94]." (Emphasis added). However, counsel noted that A had not actually been billed:

> "I do want to be careful, because I don't want to be disingenuous with this court. I do not know to the extent that [A] is at this point practically or actually potentially at risk of incurring the remaining fee between the Phia group."

Defendant argued that the evidence was insufficient to prove A had suffered economic loss in the amount of $407,400.94 for medical or other expenses:

> "I just want to note that [A's counsel] says that she requested bills and this is what she received. And, of course, the Court is free to review these and I'm not objecting to their admission.

> "But you haven't heard any testimony about what the difference is and you have to base your decision based off the information that's been presented to you. And what you're looking at is a document that expressly says this is not a bill; so I would just note that for Your Honor's thought."

Defendant added that it is "[in]appropriate for the Court to impose restitution in a situation where [the victim] hasn't incurred a monetary loss."

In a second amended judgment, the trial court ordered defendant to pay, among other things, $407,400.94 in restitution to A, holding defendant and his co-defendant jointly and severally liable. In a letter opinion, the trial court ruled:

> "The state produced itemized records of [A]'s medical, hospital, nursing and rehabilitative services and other health care services. [A] seeks restitution for her economic damages in the amount of $407,400.94. Her economic damages are presumed reasonable under ORS 137.106(1)(c) as they are 'documented in the form of a record, bill, estimate, or invoice from a business, health care entity or provider or public body as defined in ORS 174.109.' Defendants' contention that the state must produce a 'bill' is not supported by the plain language of the statute."

(Boldface and italics omitted.)

ANALYSIS

The specific question at issue here is whether, in the absence of evidence that A was liable for or subject to the $407,400.94, the state met its burden of proving that A had "incurred" medical expenses under the meaning of ORS 31.705(2)(a) and, therefore, that she suffered "economic damages" in that amount under ORS 137.103(4)(a) and ORS 137.106(2)(a).

Restitution is a creature of statute. *State v. Gaul*, 301 Or App 142, 144, 455 P3d 1016 (2019), *rev den*, 366 Or 292 (2020). Restitution means "full, partial or nominal payment of economic damages to a victim." ORS 137.103(3). There are three prerequisites for an award of restitution: (1) criminal activities; (2) economic damages; and (3) a causal relationship between the two. *State v. Andrews*, 366 Or 65, 69, 456 P3d 261 (2020). When a conviction has resulted in economic damages, "the district attorney shall investigate and present to the court *** evidence of the nature and amount of the damages." ORS 137.106(1)(a).

For restitution purposes, "economic damages" means "objectively verifiable monetary losses" as defined in ORS 31.705, but it "does not include future impairment of earning capacity." ORS 137.103(2)(a). Objectively verifiable monetary losses include "monetary losses that a victim could recover if the victim were a plaintiff in a civil action against the defendant." *State v. Islam*, 359 Or 796, 801, 377 P3d 533 (2016) (citing *State v. Ramos*, 358 Or 581, 593-94, 368 P3d 446 (2016)). "At a restitution proceeding, economic damages will be presumed reasonable if the damages are documented in the form of a record, bill, estimate or invoice from a business, health care entity or provider or public body as defined in ORS 174.109." ORS 137.106(1)(c).

Because the criminal code adopts the civil definition of "economic damages," restitution eligibility "is informed by principles enunciated in civil cases concerning recoverable economic damages." *Islam*, 359 Or at 800.

In *White*, the Oregon Supreme Court held that a person "incurs" "economic damages" under ORS 31.710 by

becoming "liable or subject to" reasonable medical "charges" regardless of whether the person ultimately must pay the charges.[1] 347 Or at 234. At trial, the plaintiff offered the medical bills that he had received as evidence of his reasonable medical expenses related to an injury sustained at the defendant's place of business. *Id.* at 215-16. The issue was whether the plaintiff could recover the total medical costs that his healthcare providers reasonably charged or whether his recovery had to be limited to the amount that Medicare actually paid to those providers, as the medical providers had "written off" a significant portion of that bill due to Medicare agreements. *Id.* at 215, 217-18. The defendant argued that because the plaintiff "did not pay or have a legal obligation to pay" his medical expenses, the plaintiff did not "incur" "economic damages" under ORS 31.710(2)(a). *Id.* at 231-32. The defendant did not contest, however, that the plaintiff had contractually agreed to pay the full amount that his providers billed him. *Id.* at 217.[2]

The court rejected the defendant's argument by relying on the common law collateral source rule. That rule dictates that a plaintiff can recover full damages from a tortfeasor, even if a third party provided money to the plaintiff to address those damages or if a third party forgave a debt incurred by those damages. *Id.* at 220-21. As a practical matter, that means that "[d]amages cannot be reduced by an amount which the plaintiff may have received from third parties." *Cary v. Burris*, 169 Or 24, 28, 127 P2d 126 (1942); *see Peterson v. State Farm Ins. Co.*, 238 Or 106, 393 P2d 651 (1964) (recognizing that plaintiffs who were injured by insured motorists could recover damages from those tortfeasors and also could recover third-party workers' compensation benefits). The rationale behind the rule

---

[1] "A minority of jurisdictions have held that plaintiffs can collect from tortfeasors no more than the sums actually paid by or on behalf of the plaintiffs, but, for the most part, those courts have reached their results by relying on statutes different than those in Oregon * * *." *White*, 347 Or at 239.

[2] The court noted that one agreement that the plaintiff had signed provided that, in consideration for medical treatment, the plaintiff was obligated "to pay the account of [the provider] in accordance with its regular rates and terms." *Id.* at 217 n 4. In a separate, signed agreement with another provider, the plaintiff acknowledged that, "you (or the responsible party in the case of a minor) are responsible for payment of your bill even if not covered in full or in part by your insurance." *Id.*

is that a tortfeasor should not benefit from that generosity or charity of others who wish to help the injured plaintiff or from insurance benefits for which a plaintiff paid premiums. *White*, 347 Or at 241.

To summarize, in *White*, it was undisputed that the plaintiff was contractually liable for the full amount of medical charges even though some of the charges were ultimately paid by Medicare and there was no evidence that the plaintiff had actually been required to pay the parts that were written off. The court held that the plaintiff had incurred the charges and was entitled to damages for those charges even if he never actually had to pay the bills himself. *Id.* at 234; *see also State v. Romero-Navarro*, 224 Or App 25, 29, 197 P3d 30 (2008), *rev den*, 348 Or 13 (2010) (explain[ing] that expenses are incurred when a victim becomes subject to the expenses even though someone else might pay them).

Since *White*, we have clarified that "in the absence of a bill from a provider or other evidence that a [victim] would be responsible for payment of a [service charge], there is insufficient evidence from which to infer that the [victim] is 'subject to' the expenses for purposes of obtaining restitution." *State v. Mann*, 329 Or App 279, 288-89, 540 P3d 582 (2023) ("[F]or the purposes of the restitution statutes, 'economic damages' are objectively verifiable out-of-pocket losses that a person could recover against the defendant in a civil action arising out of the defendant's criminal activities."); *see also State v. Herfurth*, 283 Or App 149, 158-59, 388 P3d 1104 (2016), *rev den*, 361 Or 350 (2016) (error to award restitution for the cost of a child-abuse evaluation when there was no legally sufficient evidence that the child's parents were 'subject to' the cost of the evaluation, beyond the mere fact that the services were rendered).

Here, in a preserved claim, defendant argues that the trial court erred in awarding $407,400.94 in restitution to A because she did not "incur" those charges as economic damages under ORS 137.103(4)(a) and ORS 137.106(2)(a). Defendant points out that the state did not present any evidence that A agreed to pay any of the medical charges or that she was billed for them. He notes that, to the contrary, some of the documents the state presented to support its view that

she incurred the charges stated, "this is not a bill." The state argues that *White*'s reliance on the collateral source rule shows that a victim may recover the costs associated with a tortfeasor's wrongdoing satisfied by a third party regardless of whether the victim must repay those third-party benefits. *White*, 347 Or at 221. Defendant responds that *White* is inapposite here because the state failed to show that the victim incurred the costs at all. We agree with defendant.

The collateral source rule would allow the victim in this case to recover the costs associated with defendant's wrongdoing, even if the medical providers wrote off those costs, but only if the state had first proved that the victim was contractually liable for or subject to the medical charges. *Id.* at 236; *Mann*, 329 Or App at 288-89. In *White*, it was undisputed that the victim was contractually liable, without limitation, for the charges. *White*, 347 Or at 217. In that circumstance, the court held that the plaintiff was entitled to recover those damages—*i.e.*, "the reasonable value of the medical charges to which the plaintiff is subject"—notwithstanding that the plaintiff might not have to pay them. *Id*.

Here, the record does not show that A was contractually liable for or subject to the $407,400.94. The state did not present any evidence that A agreed to be liable for the full amount—or any amount—and, unlike in *White*, that fact was not undisputed. Instead, defendant contended that the state had not shown that A was liable for or subject to the charges, and the state's evidence does not indicate or permit an inference that A was subject to any of the amounts charged. The billing identifies A as the patient and "member," but it does not provide any indication that A was responsible for the charges. Thus, given the record in this case, *White* does not support the state's argument.

Further, to the extent that the court relied on ORS 137.106 to conclude that A incurred the charges, that was error. That statute addresses the reasonableness of the amount of damages, not whether the victim suffered damages at all: "At a restitution proceeding, economic damages will be *presumed reasonable* if the damages are documented in the form of a record, bill, estimate or invoice from

a business, health care entity or provider or public body as defined in ORS 174.109." ORS 137.106(1)(c) (emphasis added). Perhaps the document in the record showed that the charges, if they were incurred, were reasonable. But that is not a substitute for evidence that the charges were incurred at all, that is, evidence, like a contract or a bill, showing that A suffered "economic damages." ORS 137.103(4)(a); ORS 137.106(2)(a).

On this record, the trial court could not find that A incurred or was subject to the medical charges. Thus, the state did not meet its burden of proof, and the trial court erred in imposing restitution in the amount of $407,400.94 to A for the partial costs of her medical treatment.

Portion of the second amended judgment imposing restitution reversed and remanded; otherwise affirmed.